Janet AUGUSTINE, Individually as Surviving Spouse of John Augustine, Deceased, as Personal Representative of the Estate of John Augustine, and as Mother and Natural Guardian of Megan Augustine, Surviving Minor Child of John Augustine, Deceased, and Claudia Lovell, Individually as Surviving Spouse of Robert Lovell, Deceased, and as Personal Representative of the Estate of Robert Lovell, Appellants,

v.

BELL HELICOPTER TEXTRON, INC., Appellee.

No. 2–95–165–CV.

Court of Appeals of Texas, Fort Worth.

May 2, 1996.

Rehearing Overruled June 6, 1996.

288

James H. Furman, Byrd, Davis & Eisenberg, L.L.P., Austin, Francis G. Fleming, Robert J. Spragg, Kreindler & Kreindler, New York City, for Appellants.

Stephen C. Howell, Stephen L. Tatum, Jeff C. Rees, Brown, Herman, Scott, Dean & Miles, L.L.P., Fort Worth, for Appellee.

Before DAUPHINOT, RICHARDS and HOLMAN, JJ.

## OPINION

RICHARDS, Justice.

This summary judgment case arises from a helicopter crash that killed two servicemen. Their widows sued the manufacturer, alleging the driveshaft failed because it was defectively designed. Because issues of fact exist on the manufacturer's government contractor defense, we reverse the trial court's summary judgment holding the manufacturer immune from liability for defective design.

### The Crash and Resulting Lawsuit

In 1991, U.S. Air Force Captain John Augustine and Staff Sergeant Robert Lovell died when the UH–1N helicopter they were flying crashed near Edwards Air Force Base in California during a training exercise. Augustine was the pilot in command and Lovell was the flight engineer. Their widows, the appellants in this case, each filed suit in Tarrant County, Texas, district courts against Bell Helicopter Textron, Inc, which built the helicopter for the United States military. Their cases were consolidated.

Janet Augustine and Claudia Lovell, seeking damages for wrongful death and survival, alleged three theories of liability under Texas tort law—negligence, strict products liability, and breach of warranty—in connection with Bell's design, manufacture, assembly, inspection, testing, sale, servicing, repair, and maintenance of the helicopter, the engine, and the lubricant used on the helicopter's driveshaft.

Bell, asserting an affirmative defense, moved for summary judgment. Known as the "government contractor defense," a 1988 U.S. Supreme Court case established that government contractors are immune from liability under state law for design defects in military equipment in some situations. *Boyle v. United Technologies Corp.*, 487 U.S. 500, 512, 108 S.Ct. 2510, 2518, 101 L.Ed.2d 442, 458 (1988). The trial court granted Bell summary judgment on its affirmative defense.

### Standard of Review

We review the summary judgment granted in this case under the now-familiar standard: (1) The movant for summary judgment has the burden of showing that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; (3) every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985). When a defendant moves for summary judgment on the basis of an affirmative defense, the movant must conclusively prove all essential elements of that defense. *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). The question on appeal is, then, did Bell establish as a matter of law its non-liability for the alleged design defects by reason of the government contractor defense.

### The Government Contractor Defense

In 1983, an American military helicopter crashed off the Virginia coast during a training exercise. Although the marine co-pilot survived the crash impact, he could not escape from the helicopter and drowned. *Boyle*, 487 U.S. at 502, 108 S.Ct. at 2513, 101 L.Ed.2d at 451. His family sued, alleging the company that built the helicopter was liable under state tort law for defectively designing the co-pilot's emergency escape system: the escape hatch opened out instead of in (and was therefore ineffective in a submerged craft because of water pressure), and other equipment blocked access to the escape hatch handle. *Id.* at 503, 108 S.Ct. at 2513, 101 L.Ed.2d at 452.

Noting that a few fields of activity "are so committed by the Constitution and laws of the United States to federal control that state law is pre-empted and replaced, where necessary," by federal common law, *id.* at 504, 108 S.Ct. at 2514, 101 L.Ed.2d at 452–53, the Court found that:

> [S]tate law which holds Government contractors liable for design defects in military equipment does in some circumstances present a "significant conflict" with federal policy and must be displaced.

*Id.* at 512, 108 S.Ct. at 2518, 101 L.Ed.2d at 458. Specifically, liability for design defects in military equipment cannot be imposed, pursuant to state law, when:

1. The United States approved reasonably precise specifications;

2. The equipment conformed to those specifications; and

3. The supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* Imposition of liability on government contractors in such cases directly affects the interests of the United States in procuring equipment: either the contractor will decline to manufacture the design specified by the government or it will raise its price. *Id.* at 506, 108 S.Ct. at 2516, 101 L.Ed.2d at 454.

### Points of Error One and Two

Augustine and Lovell argue that we must address whether the defense is applicable before we address whether Bell is entitled to summary judgment on the elements of the defense:

In order for the defense to apply, Bell must first satisfy [this court] that the military exercised discretionary judgment in selecting the design of the main input driveshaft system. Second, it must show that there was a conflict between the government requirements and state law. Only upon satisfaction of these two requirements may the three-pronged test be applied to determine if the government retained control over the precise design feature at issue.

This [c]ourt need go no further than the first question because the government exercised no discretion regarding the specific design feature at issue—the main input driveshaft of the military UH–1N helicopter. The defense is also inapplicable because there is no conflict between state law and federal law. Finally, Bell designed the driveshaft system and the government, therefore, did not exercise "final control" as envisioned in *Boyle,* which means the defense is entirely inapplicable.

We agree that whether (1) the government exercised discretion in accepting a safety risk and (2) a significant conflict existed between the requirements of Bell's helicopter contract with the Air Force and safety requirements imposed by Texas law are both relevant to Bell's government contractor defense. *See id.* at 511, 108 S.Ct. at 2518, 101 L.Ed.2d at 457 (selection of the appropriate design for military equipment "is assuredly a discretionary function" requiring judgment about the "trade-off between greater safety and greater combat effectiveness"). But we do not agree that Bell must satisfy the court on these issues before it can assert the government contractor defense.

These issues are not threshold "elements" that a government contractor must prove to assert the defense. *See Lewis v. Babcock Indus., Inc.,* 985 F.2d 83, 86–87 (2nd Cir.) (holding first element of *Boyle* test—whether government approved reasonably precise specifications—necessarily answers questions of whether contract conflicts with state law and whether military exercised discretion in accepting safety risk), *cert. denied,* 509 U.S. 924, 113 S.Ct. 3041, 125 L.Ed.2d 727 (1993). In other words, *proof of contract-state law conflict and that the government exercised discretion in choosing a part's design is part of the Boyle test, not a prerequisite to it.*

In this case, the trial court's failure to require Bell to establish that the Air Force exercised discretion in accepting a safety risk in the design of the driveshaft or to establish that the Air Force's requirements conflicted with Texas product liability law was not error. Points of error one and two are overruled.

### Point of Error Four

Augustine and Lovell argue in point of error four that there are at least fact issues on:

● whether the United States approved reasonably precise specifications concerning the main input drive system (the part of the helicopter Augustine and Lovell allege was defectively designed);

● whether the driveshaft system conformed to reasonably precise specifications; and

● whether Bell warned the United States about the dangers of misalignment of the driveshaft in UH–1N helicopters (which Augustine and Lovell allege caused the crash).

Bell contends that its evidence on the three prongs of the *Boyle* test "is compelling to the point of being overwhelming," and that the trial court did not err in granting Bell summary judgment on its government contractor defense.

■ Considering only whether the Air Force approved reasonably precise specifications of an allegedly defective feature in the helicopter, there is a genuine issue of material fact. The evidence suggests that the Air Force approved reasonably precise specifications regarding the general design of the helicopter. But, viewing the evidence in the light most favorable to Augustine and Lovell, whether the Air Force "approved reasonably precise specifications" of the allegedly defective main driveshaft system is in dispute. *See Bailey v. McDonnell Douglas Corp.,* 989 F.2d 794, 799 (5th Cir.1993) ("the requirements of 'reasonably precise specifications' and conformity with them refer to the particular feature of the product claimed to be defective"). The approval requirement assures "that the design feature in question was considered by a Government officer, and not merely by the contractor." *Boyle,* 487 U.S. at 512, 108 S.Ct. at 2518, 101 L.Ed.2d at 458. Augustine and Lovell presented evidence that during the Vietnam war, the Air Force "was in very dire need of a twin-engine air/sea rescue helicopter" in a very short, limited time. Bell had a prototype of a twin-engine helicopter it had developed for civilian use, the Air Force flew it, and began contract negotiations for a militarized version of the helicopter. The Air Force participated in discussions about and changes to the external hoist, the design of the main rotor blades, armament, and other areas, but there were never any discussions regarding or design choices or changes made on the drive shaft. The Air Force simply accepted Bell's design without making any comments or changes to it.

■ While *Boyle* does not require that the government originate or revise every, or even any, portion of the specifications, neither is there a prohibition against a contractor originating specifications subsequently approved by the government, *see Boyle,* 487 U.S. at 513, 108 S.Ct. at 2519, 101 L.Ed.2d at 458, *Skyline Air Serv., Inc. v. G.L. Capps Co.,* 916 F.2d 977, 979–80 (5th Cir.1990), acceptance by the Air Force of Bell's design of the main driveshaft certainly does not per se constitute a discretionary design choice or "approval" as contemplated by *Boyle* either. *See Bailey,* 989 F.2d at 799 n. 9 (*Boyle* does not protect manufacturer where government delegates responsibility for the design of particular components to the contractor). This evidence at least raises an issue of material fact, so the question is properly reserved for determination by the factfinder. The purpose of summary judgment is not to deprive a litigant of his or her right to trial by jury, but to eliminate *patently unmeritorious* claims. *Camden Machine & Tool, Inc. v. Cascade Co.,* 870 S.W.2d 304, 313 (Tex. App.—Fort Worth 1993, no writ) (emphasis added). We sustain point of error four.

### Summary of Disposition

Because whether the government approved reasonably precise specifications on the driveshaft is a question of fact for the jury in this case, (1) we go no further in our analysis of Bell's affirmative defense in this case, (2) it is unnecessary to address point of error three, which asserts that Bell failed to demonstrate that it warned the military of inherent dangers in the driveshaft system, and (3) we reverse and remand the case for trial on the merits.