**William Bradford ADKINS, M.D., Appellant,**

v.

**Christina FUREY and Michael Furey, Appellees.**

No. 04–98–01030–CV.

Court of Appeals of Texas, San Antonio.

May 19, 1999.

Rehearing Overruled June 21, 1999.

---

Christopher Chay LeUnes, Asst. Atty. Gen., Tort Litigation Division, Austin, for appellant.

John F. Davis, Law Office of John F. Davis, San Antonio, for appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice and KAREN ANGELINI, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

This is an accelerated appeal of an interlocutory order denying Dr. Adkins's motion for summary judgment on the grounds of official immunity. For the reasons stated in this opinion, we affirm the order of the trial court.

### FACTUAL BACKGROUND

Christina Furey, an operating room technician at the time of the incident in question, was assisting Dr. Adkins with a cesarean delivery. After closing the inci-

sion, Furey alleges, Dr. Adkins pressed the surgical staple gun to Furey's shoulder and shot a staple into her arm. The gun was unsterile, the staple penetrated her skin and tissue and had to be removed with a Kelly clamp.

The incident occurred at Medical Center Hospital, n/k/a University Hospital. Furey was employed by the Bexar County Hospital District. At the time, Dr. Adkins was a second-year resident in obstetrics and gynecology at the University of Texas Health Science Center (UTHSC) and the issue arose as to whether Dr. Adkins, in performing the cesarean procedure, did so as an employee of UTHSC, which is a state entity, or as an employee of the Bexar County Hospital District (the District).

### PROCEDURAL BACKGROUND

The Fureys initially sued Adkins and UTHSC for his intentional and negligent conduct. Judge Peeples granted UTHSC's motion for summary judgment on grounds of sovereign immunity. The judgment in favor of UTHSC was severed and assigned a new cause number. Adkins filed a motion for summary judgment on plaintiffs' remaining claims against him on the grounds of official immunity. In response, the Fureys filed their second amended original petition alleging that Adkins was employed by the District and that his actions were outside the course and scope of his employment. Adkins responded by filing additional evidence attached to his second amended motion for summary judgment.[1] Judge Peden heard argument and denied the motion. This interlocutory appeal ensued. TEX. CIV. PRAC. & REM.CODE § 51.014(a)(5).

### STANDARD OF REVIEW

When reviewing a ruling on a motion for summary judgment, we are cognizant of the fact that the movant has the burden of

---

1. Attached to Adkins' second amended motion for summary judgment were plaintiffs original and first and second amended petitions, the affidavit of Jack Park, deposition testimony of Dr. Adkins and of John Guest, and the summary judgment granted in favor of UTHSC.

showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. In deciding whether there is a disputed material fact issue precluding summary judgment, the evidence favorable to the nonmovant will be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and any doubts must be resolved in favor of the nonmovant. *See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997) (citing *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985)). A defendant is entitled to summary judgment if he conclusively establishes all of the elements of an affirmative defense. *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995).

### The Issues and the Law

To conclude that Adkins is entitled to summary judgment under the sovereign immunity umbrella requires affirmative responses to three questions: (1) Whether Dr. Adkins was an employee of UTHSC? (2) If so, whether his actions fall within the course and scope of his duties? and (3) Whether § 101.106 of the tort claims act applies to an employee that commits an assault?

### A. Employee of Whom?

Appellant admits that the District served as his paymaster but that UTHSC had control over him. Under the Texas Tort Claims Act, "employee" is defined as:

a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Tex. Civ. Prac. & Rem.Code § 101.001(2). Adkins relies on *Rodriguez v. Department of Health and Mental Retardation,* 942 S.W.2d 53, 56 (Tex.App.—Corpus Christi 1997, no writ) for the proposition that to be subject to liability under the tort claims act, the alleged employee must be under the control and direction of the alleged employer. This does not resolve the issue, however, as the statutory definition would seem to require control *and* paid employment to invoke the Tort Claims Act's waiver of immunity.

A Graduate Medical Training Agreement governs the medical training and employment in question. It is signed by Dr. Adkins, John A. Guest as president and chief executive officer of the District, and by a Dr. Forland on behalf of James J. Young, Ph.D., Dean of the Medical School for UTHSC. The agreement provides that the District does not have a legal right to control the medical resident's tasks performed at the District's hospital. However, the agreement also provides that the District pays the resident an annual stipend and provides such employee benefits as leave time, insurance, workers' compensation, and parking privileges. The agreement also requires the resident to become familiar with and abide by the House Staff Manual, the bylaws of the medical-dental staff, and the policies, rules and regulations of the District.

Jack Park, an attorney who has been employed by UTHSC for nearly 30 years, is the Executive Director for Legal Affairs and Technology Licensing at UTHSC. On the issue of control, his sworn affidavit stated that according to the agreement and

as a matter of implementation and practice, the University of Texas Health Science Center controls the details of the work preformed by the House Staff Physicians, like Dr. William Bradford Adkins. The UTHSC recruits, sponsors, trains and makes the decisions as to whether the House Staff Physicians remain in the program. Schedules, rotations, and the details of the practice of medicine are made under the direction of faculty.... The Bexar County Hospital District does not assume any right to control the tasks of the House Staff Physicians under the Graduate Medical Training Agreement.

In response to the motion for summary judgment, appellees attached a deposition excerpt wherein Park stated that every physician who has University Hospital privileges and who, therefore, might be in a position to exercise some control over a medical resident, was also a faculty member of the Health Science Center. There are no non-faculty doctors, or outside doctors, at the Hospital. All physicians in private practice who have been granted privileges at University Hospital have been granted nonpaid faculty status. Nevertheless, Park admitted, all physicians, including medical residents like Dr. Adkins, were under some control of the Hospital District. He opined that providing benefits of worker's compensation insurance and withholding federal taxes also demonstrated evidence of employment by the District. In fact, UTHSC provided worker's compensation benefits to all employees except the House Staff Physicians or medical residents. Further, Park was not aware of any UTHSC documents that list Adkins as its employee and he sent a letter to opposing counsel stating that "the incident referred to in your letter does not involve any University employee nor did it occur in any facility owned or operated by the University."

Dr. John A. Guest, president and chief executive officer for the District, testified in deposition that the department heads at UTHSC direct the *training* activities of the residents, including the medical care to be given, and that none of these activities are controlled by the District. He also stated that the District does assume the right to control activities of residents "to the extent they may engage in behavior that would be outside our rules and regulations, yes." Such conduct was also regulated by UTHSC. He also understood that the resident doctor "is working for both organizations." They are "being funded by the Bexar County Hospital District. They are under the supervision of the Health Science Center.... And the control of the Health Science Center." He also stated that liability coverage is provided by UTHSC and funding is provided by the District. They work under the faculty of the medical school.

In deposition excerpts provided by appellees, Guest testified: "I'm not sure that I see any specific language [in the agreement] as to who the house staff physician works for." "I didn't say anything about his employment. I said as a graduate trainee, he would be under [UTHSC] supervision.... I don't know whether he's an employee of the UT Health Science Center." We find that Adkins did not conclusively establish that he was an employee of UTHSC. In *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 887 (1st Cir.1988), the court found that those particular medical residents are employees of the hospital districts and students of the medical school. We think the issue in this case is one to be resolved by the jury.

**B. Course and Scope of Employment**

On the issue of course and scope of employment, Park stated in his affidavit that on the day of the incident, Adkins, "while in the operating room performing a cesarean surgery, was performing his duties and tasks" under the agreement. Park also testified in deposition that shooting someone with a staple gun would not be in furtherance of the employer's business or an accomplishment of the objective for which the employee was employed. Dr. Guest agreed, "shooting a staple gun at someone is outside the scope of Adkins's employment and in violation of policies, rules, and regulations under the agreement." This is clearly another issue for the jury to decide.

**C. Intentional Tort**

In his motion for summary judgment, Adkins asserts that UTHSC obtained its favorable judgment on the grounds that it was exempt from liability for the intentional torts of its employees under the Texas Tort Claims Act. TEX. CIV. PRAC. & REM. CODE § 101.057(2) (tort claims act does not apply to claim "arising out of assault ... or any other intentional tort"). He further asserts that, as an employee of UTHSC, the tort claims act bars an action against

the employee when the governmental unit has participated in a judgment or settlement involving the same subject matter. *See id.* at § 101.106.[2] However, Adkins has not established that he was an employee of UTHSC. We do not think that his employment, for purposes of immunity, could be established on the basis of an allegation in the plaintiffs' previous pleadings when UTHSC denied Adkins was its employee. This is particularly true in light of the letter responding to a request for discovery dated September 19, 1994, wherein Jack Park stated "the incident referred to in your letter does not involve any University employee." *Bell v. Love,* a school discipline case, is distinguishable because the employment of the individual defendants was not in question. Moreover, that case focused on whether the claims were brought under the Tort Claims Act as specifically alleged in live pleadings. *See Bell v. Love,* 923 S.W.2d 229, 231 (Tex. App.—Houston [14th. Dist.] 1996, no writ). The first summary judgment granted in this case established that the Act was not invoked by the intentional conduct of Dr. Adkins. UTHSC based its motion for summary judgment on Dr. Adkins's deposition testimony that his conduct was intentional.

Appellant's point of error is overruled and the trial court's order denying summary judgment is affirmed.

---

**2.** Section 101.106 provides: "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." Adkins cites three cases in support of the position that intentional misconduct does not affect the immunity afforded under § 101.106 of the tort claims act. *See Owens v. Medrano,* 915 S.W.2d 214, 216 (Tex.App.—Corpus Christi 1996, writ denied); *Brand v. Savage,* 920 S.W.2d 672 (Tex.App.—Houston [1st Dist.] 1995, no writ); *White v. Annis,* 864 S.W.2d 127, 130 (Tex.App.—Dallas 1993, writ denied). *White,* however, did not involve an alleged intentional tort or any conduct outside the course and scope of employment and we are not inclined to follow those cases which would extend its analysis beyond negligence cases. *Brand* relies on *White's* conclusions as if there were an intentional tort involved. *Owens* misinterprets § 101.106's requirement that the claim against the governmental unit be *under* the tort claims act in order for the judgment involving the employer act as a protective bar to claims against the employee. Judge Peeples's summary judgment in favor of UTHSC was premised on the fact that an intentional tort is not covered by the waiver of immunity and, therefore, does not arise under the Tort Claims Act.