**Reversed and Remanded and Opinion filed April 25, 2013.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-12-00198-CV

**ZULEIMA OLIVARES. INDIVIDUALLY AND AS THE REPRESENTATIVE OF THE ESTATE OF PEDRO OLIVARES, JR., AND PEDRO OLIVARES, Appellants**

**V.**

**BROWN & GAY ENGINEERING, INC., AND MIKE STONE ENTERPRISES, INC., Appellees**

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2008-19417**

## O P I N I O N

Appellants Zuleima Olivares, individually and as the representative of the estate of Pedro Olivares, Jr., and Pedro Olivares appeal the trial court's granting of appellees Brown & Gay Engineering, Inc.'s (Brown & Gay) and Mike Stone Enterprises, Inc.'s (MSE) pleas to the jurisdiction. In their pleas, appellees asserted that they are immune from suit based on their status as governmental employees, as defined in the Texas Tort Claims Act (TTCA), sued in their official

capacity. Appellants argue that the trial court erred in granting appellees' pleas to the jurisdiction because appellees have not shown that they meet the statutory definition of governmental employees. We reverse and remand for proceedings consistent with this opinion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On January 1, 2007, Pedro Olivares, Jr. and his wife were traveling westbound on the Westpark Tollway near Dairy Ashford Road in Harris County when they were struck by a vehicle driven by Michael Ladson. According to appellants, Ladson was traveling on the Tollway in the wrong direction after entering the westbound lanes near Gaston Road in Fort Bend County, approximately eight and one-half miles from the accident scene. Pedro Olivares, Jr. sustained severe bodily injuries resulting in death.

Appellants asserted negligence and premises defect claims against multiple defendants. These claims involved allegations that the various defendants failed to design and install proper signs, warning flashers, and traffic-control devices near the area where Ladson entered the Tollway. This court previously addressed the trial court's denial of two other co-defendants' (Fort Bend County Toll Road Authority (FBCTRA) and Texas Department of Transportation) pleas to the jurisdiction. *Fort Bend Cty. Toll Rd. Auth. v. Olivares*, 316 S.W.3d 114 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (reversing and remanding in part, and reversing and rendering in part)[1]; *Tex. Dep't of Transp. v. Olivares*, 316 S.W.3d 89 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (affirming in part, reversing and remanding in part, and reversing and rendering in part). After remand, those defendants were non-suited.[2] The only remaining defendants in the case are

_____

[1] We cite this case as "*Olivares 1.*"

[2] Defendants Fort Bend County, Harris County, and Harris County Toll Road Authority

2

Brown & Gay and MSE.

In their third amended petition, appellants allege that Brown & Gay, a Texas engineering company that performed the design work on the Tollway pursuant to agreements with, among others, FBCTRA, failed to properly design signs and traffic layouts in accordance with the Texas Manual on Uniform Traffic Control Devices and breached the engineering standard of care. Appellants also allege that MSE, a private Texas company (also d/b/a Professional Project Management Services) that contracted with FBCTRA to operate the Tollway, negligently delayed and denied safety recommendations and requests from professional engineers to install lights that would have improved safety.

Both Brown & Gay and MSE filed pleas to the jurisdiction based on governmental immunity, arguing that they constitute governmental employees, as defined in the TTCA, sued in their official capacity. The trial court granted Brown & Gay's and MSE's jurisdictional pleas. Appellants now appeal the trial court's granting of appellees' pleas.

## II.    GOVERNMENTAL IMMUNITY

Generally, in Texas, a governmental unit is immune from tort liability and suit unless the Legislature has waived immunity. *City of Galveston v. State*, 217 S.W.3d 466, 468 (Tex. 2007); *MBP Corp. v. Bd. of Trustees of Galveston Wharves*, 297 S.W.3d 483, 487 (Tex. App.—Houston [14th Dist.] 2009, no pet.).[3]  FBCTRA

---

also were non-suited.

[3] The TTCA provides a limited waiver of governmental immunity for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2) (West 2012). One exception to waiver is where a claim arises from a governmental unit's discretionary act. *Id.* § 101.056; *Tex. Dept. of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002). Similarly, the TTCA does not waive governmental immunity as to claims arising from the initial failure to place a traffic sign if the

3

is a local government corporation and, therefore, a governmental unit for purposes of the TTCA. *Olivares 1*, 316 S.W.3d at 127–28.[4]

When a governmental employee files a plea to the jurisdiction, he invokes the immunity from suit held by the government itself. *See Texas A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 844 (Tex. 2007). The TTCA defines an "employee" for purposes of governmental immunity:

> [A] person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2) (West 2012).

Under the TTCA, a person is not an employee of a governmental unit if the person is an independent contractor or "performs tasks the details of which the governmental unit does not have the legal right to control." *See Murk v. Scheele*, 120 S.W.3d 865, 866 (Tex. 2003) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2)). The statutory definition requires both "control *and* paid employment to invoke the [TTCA]'s waiver of immunity." *See Adkins v. Furey*, 2 S.W.3d 346,

---

failure is tied to a discretionary decision, or claims arising from the condition of a traffic sign unless the condition is not corrected within a reasonable time after notice. TEX. CIV. PRAC. & REM. CODE ANN. § 101.060(a)(1–2); *State ex rel. State Dep't of Highways and Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 326–27 (Tex. 2002). However, "[a] governmental unit's negligence in implementing a formulated policy . . . is not a discretionary function." *Olivares 1*, 316 S.W.3d at 122.

[4] In *Olivares 1*, we concluded that appellants' pleadings against FBCTRA with regard to traffic-control device deficiencies neither affirmatively demonstrated nor affirmatively negated subject-matter jurisdiction where they "do not specify whether the traffic-control devices were inadequate, or the warning signs were negligently located, because of FBCTRA's negligent implementation of the construction plans." 316 S.W.3d at 124. Therefore, we reversed the denial of FBCTRA's plea to the jurisdiction and remanded to allow amendment of the pleadings. *Id.*

4

348 (Tex. App.—San Antonio 1999, no pet.) (emphasis in original).

In determining whether a person is an employee or an independent contractor, the focus is on who has the right to control the details of the work. *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002) (citing *Thompson v. Travelers Indem. Co.*, 789 S.W.2d 277, 278 (Tex. 1990)); *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex. App.—Houston [14th Dist.] 2000, no pet.). An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his own means and methods without submitting to the control of the other person as to the details of the work. *Indus. Indem. Exch. v. Southard*, 160 S.W.2d 905, 907 (Tex. 1942). In contrast, an "employer controls not merely the end sought to be accomplished, but also the means and details of its accomplishment." *Limestone*, 71 S.W.3d at 312 (citing *Thompson*, 789 S.W.2d at 278).

A party can prove right to control in two ways; first, by evidence of a contractual agreement that explicitly assigns a right to control; and second, in the absence of such contractual agreement, by evidence of actual control over the manner in which the work was performed. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002). A written contract expressly providing for an independent-contract relationship is determinative of the parties' relationship in the absence of extrinsic evidence indicating the contract was subterfuge, the hiring party exercised actual control in a manner inconsistent with the contract, or if the written contract has been modified by a subsequent agreement. *Weidner*, 14 S.W.3d at 373.

Courts may consider several "right to control" factors in determining whether someone is an independent contractor, including: (1) the independent nature of the person's business; (2) the person's obligation to furnish necessary tools, supplies, and material to perform the job; (3) the right to control progress of

5

the work, except as to final results; (4) the time for which the person is employed; and (5) the method of payment, whether by time or by the job. *Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex. 2005) (citing *Southard*, 160 S.W.2d at 906) (concluding as matter of law that director of university play and wife were independent contractors, not employees, per TTCA). "[T]he type of control normally exercised by an employer include[s] when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result." *Thompson*, 789 S.W.2d at 278–79. Exercise of the right to control is ordinarily a question of fact, but whether a contract gives the right to control is generally a question of law. *See Bright*, 89 S.W.3d at 606. However, if the controlling facts are undisputed, whether the relationship is that of an employee or of an independent contractor is a question of law. *Bishop*, 156 S.W.3d at 585.

### III.     PLEA TO THE JURISDICTION

Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus properly is asserted in a plea to the jurisdiction. *Johnson v. City of Bellaire*, 352 S.W.3d 260, 263 (Tex. App.—Houston [14th Dist.] 2011, pet. filed) (citing *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999)). A plea challenging the trial court's jurisdiction raises a question of law that we review de novo. *Id.* (citing *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007)). In a plea to the jurisdiction, a party may challenge the pleadings or the existence of jurisdictional facts. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Id.* at

227. The standard of review for a jurisdictional plea based on evidence "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id*. at 228. Under this standard, we credit as true all evidence favoring the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Id.* The movant must assert the absence of subject-matter jurisdiction and present conclusive proof that the trial court lacks subject-matter jurisdiction. *Id*. ("By requiring the state to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to put on their case simply to establish jurisdiction." (internal quotation marks and citation omitted)). If the movant discharges this burden, the nonmovant must present evidence sufficient to raise a material issue of fact regarding jurisdiction, or the plea will be sustained. *Id.* However, as with a traditional motion for summary judgment, if the movant fails to present conclusive proof of facts negating subject-matter jurisdiction, the burden does not shift to the nonmovant to establish the existence of an issue of material fact. *See id.* Thus, as the movants here, MSE and Brown & Gay have the burden to establish their entitlement to governmental immunity as governmental employees. *See id.*

## IV.     ANALYSIS

### A. Whether MSE is an independent contractor or FBCTRA's employee

In support of its plea, MSE attached the consulting agreement between FBCTRA and Michael E. Stone d/b/a Professional Management Services. According to the consulting agreement, FBCTRA retained MSE "as an independent contractor, and not as an employee." MSE agreed to "devote his best efforts to his position as an independent consultant." MSE also agreed to act as FBCTRA's "representative in construction management activities" for the Tollway project, and assist FBCTRA in coordinating consultant and contractor services "to protect the best interest of" FBCTRA in the construction of the Tollway project.

7

The scope of MSE's consulting services included: coordinating and facilitating communications among the various entities involved; monitoring, reviewing, and reporting to FBCTRA on construction management-related activities; and recommending actions to FBCTRA for construction management-related activities. FBCTRA agreed to pay MSE "at the rate of $135.00 per hour payable monthly, but only if services are actually rendered hereunder." Per the contract, MSE was not entitled to participate in any benefit programs for FBCTRA employees, such as medical and disability benefits, pension, profit-sharing, or other fringe benefits.

MSE also attached Michael Stone's affidavit to its plea. In his affidavit, Stone, the President of MSE d/b/a Professional Project Management Services, described how MSE entered into the consulting agreement with FBCTRA, and its terms. Stone also stated that because FBCTRA did not have any full-time employees, only a board of directors, FBCTRA "delegated the responsibilities of overseeing the construction and management of the Tollway to MSE." Stone further stated that "[a]ll decisions made or actions performed in connection with MSE's work on the Tollway had to be approved by FBCTRA's board," "MSE's activities and work concerning the Tollway were controlled and directed by FBCTRA," and "MSE did not have any independent autonomy or control over the Tollway." Finally, Stone stated that all of MSE's work occurred in the course and scope of the contract, in FBCTRA's paid service, and under FBCTRA's control.

To their response, appellants attached an excerpt from Stone's deposition in which Stone indicated that he was not an employee of FBCTRA or an agent for Fort Bend County or FBCTRA.

Relying on *Farlow v. Harris Methodist Fort Worth Hospital*,[5] appellants argue that the statement in the consulting agreement between FBCTRA and MSE

---

[5] 284 S.W.3d 903, 911 (Tex. App.—Fort Worth 2009, pet. denied).

8

that MSE is retained as an independent contractor is determinative of the parties' relationship. Appellants also argue that nothing in the consulting agreement reflects any retention by FBCTRA of the right to control the details of MSE's work, and that MSE's attempt to show actual control by FBCTRA based on Stone's conclusory affidavit "should be discarded and given no weight." Further, appellants contend that, during Stone's deposition, Stone stated he was not an employee of FBCTRA or an agent of Fort Bend County or FBCTRA, which statements qualify as judicial admissions and thus conclusively disprove that MSE is entitled to governmental immunity.[6]

MSE asserts that, despite its use of the "label" of independent contractor, the parties' contract "places control over the work squarely in the hands of FBCTRA." MSE contends that, per the contract, MSE is to act as FBCTRA's "representative" in construction management activities; "coordinate and facilitate communications between [FBCTRA]" and engineers, designers, and contractors; "monitor, review and report to [FBCTRA] and recommend actions"; and "protect the best interest of [FBCTRA]" in the construction of the Tollway. MSE argues the contract gives MSE no authority to make decisions, and alleges in Stone's affidavit that all control over the decisions for which MSE was providing consulting services remained with FBCTRA's board of directors, and all the work performed by MSE was controlled by FBCTRA.

We conclude that MSE did not discharge its burden to show that MSE was an employee of FBCTRA, and thus did not present conclusive proof that the trial

---

[6] Although Stone stated that he was not an employee or agent of FBCTRA, the deposition excerpt relied on by appellants does not show that Stone specifically admitted he served as an independent contractor under the contract. Nor does the excerpt address any contractual right to control by FBCTRA or any instances where FBCTRA actually controlled the details of MSE's work. However, because we conclude MSE has not met its burden to show that it was a governmental employee of FBCTRA, we need not decide whether Stone's statements qualify as judicial or quasi-judicial admissions to finally dispose of this issue. *See* TEX. R. APP. P. 47.1.

9

court lacks subject-matter jurisdiction. In section 1 titled "**Consulting Relationship**," the consulting agreement between MSE and FBCTRA expressly provides that Stone d/b/a Professional Project Management Services is an independent contractor:

> Authority hereby retains Consultant, and Consultant hereby agrees to be retained by Authority, *as an independent contractor, and not as an employee*.

(Emphasis added). Such express language is ordinarily determinative of the parties' relationship unless "other contract language evidences such a right of control that the relationship is actually that of employer/employee." *Farlow*, 284 S.W.3d at 911; *see Weidner*, 14 S.W.3d at 374. Here, none of the contract language relied on by MSE supports an employment relationship. Although the contract outlines what consulting services MSE is obligated to perform, FBCTRA does not retain any right to control the *details* of how MSE performs its various consulting services. *Compare Farlow*, 284 S.W.3d at 913–17 (considering various contractual obligations imposed on doctor by hospital, and concluding no fact issue was raised on whether contract stating that doctor was independent contractor of hospital was sham), *with Weidner*, 14 S.W.3d at 374–75 (concluding, despite independent contractor status expressly outlined in initial contract, that subsequent contract modified relationship to one of employment where it "quite rigidly dictated the 'who,' 'what[,]' 'where,' 'when,' as well as other material details of [the] work").

While the nature of MSE's work appears to involve recommending decisions and actions on the Tollway project, instead of ultimately making or approving those decisions and actions, this does not amount to FBCTRA's retention or exercise of any right to control the progress or methods of MSE's

work as an "independent consultant." At the most, this indicates that FBCTRA had control over the end results of MSE's consulting work on the Tollway. *See Bishop*, 156 S.W.3d at 584–85 (concluding director of university play and wife were independent contractors, not university employees, where university's "approval of the script did not go beyond dictating the final result of [their] work"); *Limestone*, 71 S.W.3d at 312 (concluding driver was independent contractor; although limestone distributor dictated where to pick up and drop off loads, driver "had broad discretion in how to do everything else"). For the same reason, the allegations in Stone's affidavit that FBCTRA's board had to approve all the Tollway project decisions and that MSE did not have "independent autonomy or control over the Tollway" do not raise a fact issue. And Stone's deposition testimony indicates that Stone, president of MSE, did not view himself as an employee or agent of FBCTRA.

With regard to Stone's statements in his affidavit that "[a]t all times, MSE's activities and work concerning the Tollway were controlled and directed by FBCTRA" and that "[a]ll of the work performed by MSE in connection with the Tollway occurred . . . under the control of the FBCTRA," these are conclusory statements because they do not provide the underlying facts to support the conclusion that FBCTRA controlled all of MSE's work. *See Dolcefino v. Randolph*, 19 S.W.3d 906, 930 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Other than repeating the contractual terms and stating that FBCTRA's board had to approve final decisions with regard to Tollway work, Stone states no facts—such as describing specific instances or examples of conduct by FBCTRA whereby FBCTRA exercised actual control over the details of MSE's work during the Tollway project—upon which he based his conclusion that all of MSE's work was controlled by FBCTRA. *See CA Partners v. Spears*, 274 S.W.3d 51, 64 (Tex.

App.—Houston [14th Dist.] 2008, pet. denied). "Nowhere does [Stone] provide readily controvertible facts personally known to him, much less link his conclusion to these facts." *See id.* Conclusory affidavit testimony is substantively defective, is not sufficient to raise fact issues, and amounts to no evidence.[7] *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232–33 (Tex. 2004); *Ryland Group v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996). Thus, MSE has provided no extrinsic evidence of instances of actual control by FBCTRA sufficient to show that the parties' true agreement was one of employment. *See Weidner*, 14 S.W.3d at 373.

Finally, the only "right to control" factor arguably weighing in MSE's favor is that MSE was to be paid hourly. However, the terms of MSE's compensation also indicated that MSE would be paid "only if services are actually rendered" within the given month. Further, the contract expressly prohibited MSE from participating in or receiving any benefits under any programs for FBCTRA employees. *See Limestone*, 71 S.W.3d at 312–13 (considering that driver held to be independent contractor received no pay if there was no work and did not receive employee benefits).

After reviewing the record evidence in the light most favorable to appellants and drawing all reasonable inferences in their favor, we conclude that MSE has not met its burden to present conclusive proof of facts regarding FBCTRA's right to control the details of MSE's work sufficient to negate subject-matter jurisdiction here. *See Miranda*, 133 S.W.3d at 227–28. In addition, because the controlling facts are undisputed and only one reasonable conclusion can be inferred, we

---

[7] Although appellants did not object below, objections to substantive defects can be raised for the first time on appeal and are not waived by the failure to obtain a ruling from the trial court. *See McMahan v. Greenwood*, 108 S.W.3d 467, 498 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

conclude as a matter of law that MSE's relationship with FBCTRA is that of an independent contractor. *See Bishop*, 156 S.W.3d at 585. Therefore, we sustain appellants' first issue.

## B. Whether Brown & Gay is an independent contractor or FBCTRA's employee

In support of its plea, Brown & Gay attached the engineering services agreement between FBCTRA and Brown & Gay. Pursuant to the agreement, Brown & Gay was to perform professional engineering services as the general engineering consultant on the Tollway extension project. Brown & Gay agreed to function as FBCTRA's representative solely and exclusively for its benefit. The contract provided that "[a]ll services rendered by the Engineer under this Agreement shall be performed under the supervision of the FB[C]TRA." Brown & Gay further agreed to render its services in accordance with generally accepted professional engineering standards. The scope of services was outlined in an attachment to the contract; the work generally consisted of "providing program management; design management engineering services for the planning and design of the Project; plans, specifications and estimates for various engineering tasks; and Construction Phase Services for observing and reporting construction activities." One of Brown & Gay's specific tasks was to "prepare drawings, specifications and details for all signs" for the Tollway project. FBCTRA agreed to compensate Brown & Gay based on project cost estimates and hourly billing rates for various levels of Brown & Gay personnel, up to a maximum of just over $4 million for the Tollway project. The contract outlined the timetable for Brown & Gay's performance of its services in three phases, plus a "Contract Closeout" phase. Brown & Gay agreed to "furnish and maintain, at its own expense, adequate and sufficient personnel and equipment," "transportation, supplies, and

13

materials" to perform its services. Pursuant to the contract, Brown & Gay agreed to remove any of its employees "who, in the opinion of the FB[C]TRA, is incompetent or by his conduct becomes detrimental to the Project." Brown & Gay also agreed to obtain and maintain various types of insurance, and to indemnify FBCTRA for certain third-party claims.

Brown & Gay also attached to its plea the affidavit of Gary Gehbauer, who was the Deputy Program Manager on the Tollway project. In his affidavit, Gehbauer described how Brown & Gay entered into the engineering services contract and its terms. Gehbauer stated that because FBCTRA did not have any full-time employees, only a board of directors, FBCTRA "delegated the responsibilities of . . . designing road signs and traffic striping in connection with the Westpark Toll Road Project" to Brown & Gay. Gehbauer further stated that "[a]ll decisions made or actions performed in connection with [Brown & Gay's] work on the [Tollway] Project had to be approved by FBCTRA's Board," "[Brown & Gay's] activities and work concerning the [Tollway] Project were controlled by the FBCTRA," and "[Brown & Gay] did not have any independent autonomy or control over the Project." Finally, Gehbauer stated that all Brown & Gay's work occurred in the course and scope of the contract, in FBCTRA's paid service, and under FBCTRA's "control and supervision."

To their response, appellants attached excerpts from Gehbauer's deposition. In his deposition, Gehbauer indicated that only Brown & Gay employees were responsible for traffic engineering and signage on the Tollway project. One Brown & Gay employee, Federico Mendoza, was the lead of Brown & Gay's traffic group and "the engineer responsible for the striping and the signing." It was Mendoza's responsibility to make sure that the design was "done correctly." Gehbauer reviewed the work that Mendoza prepared for this particular project. Gehbauer

14

indicated that he and Mendoza only worked for, and were employees of, Brown & Gay.

Appellants argue that the engineering services agreement between Brown & Gay and FBCTRA at most indicates FBCTRA's general control and supervision over the Tollway project, not the right to control the details of Brown & Gay's Tollway project work. *See EPGT Tex. Pipeline, L.P. v. Harris Cty. Flood Control*, 176 S.W.3d 330, 337 (Tex. App.—Houston [1st Dis.] 2004, no pet.). Appellants contend that Gehbaurer testified at his deposition that only Brown & Gay employees were responsible for traffic engineering and signage, and that he and Federico Mendoza (the lead engineer of the traffic group) were solely employees of Brown & Gay. In other words, appellants assert that Brown & Gay did not meet its burden to prove that FBCTRA had a right to control the details of the traffic engineering work performed by Brown & Gay.

Brown & Gay argues that this court previously held that selecting and designing signs are discretionary decisions for which FBCTRA is entitled to governmental immunity. *See Olivares 1*, 316 S.W.3d at 123–24; *supra* n.4. Brown & Gay contends that it selected and designed traffic signs on behalf of FBCTRA pursuant to their contract, and Gehbauer's affidavit confirms that Brown & Gay was performing the FBCTRA-delegated tasks of designing road signs and traffic striping. Essentially, Brown & Gay's theory is that as the engineering firm acting as an agent for FBCTRA to select and design traffic signs it is shielded from suit by the same governmental immunity that protects FBCTRA, without any need to prove right to control—relying on *City of Houston v. First City*[8] and *Ross v. Linebarger, Goggan, Blair and Sampson, LLP.*[9] Further, even if it is subject to the

---

[8] 827 S.W.2d 462 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

[9] 333 S.W.3d 736 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

15

"right to control" test, Brown & Gay argues that the undisputed evidence proves FBCTRA's control here because the contract provides that Brown & Gay would serve as FBCTRA's "representative solely and exclusively for the benefit of FB[C]TRA" and would perform "under the supervision of the FB[C]TRA," and according to Gehbauer, all decisions related to Brown & Gay's work on the Tollway had to be approved by FBCTRA's board, and FBCTRA controlled all of Brown & Gay's Tollway project work.[10]

### 1. Brown & Gay's assertion that it should be treated as FBCTRA's governmental agent fails.[11]

Brown & Gay's reliance on *First City* and *Ross* is misplaced; thus, its

---

[10] Brown & Gay also relies on federal cases applying the government-contractor defense, also called the military-contractor defense. *See Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988); *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940); *Ackerson v. Bean Dredging LLC*, 589 F.3d 196 (5th Cir. 2009). Brown & Gay argues that it is shielded from suit because it was involved in discretionary design decisions pursuant to a government contract to perform the government's authorized public works project. However, Texas courts only have recognized this affirmative, federal common-law defense in the context of federal government contracts involving military procurement. *See, e.g., Torrington Co. v. Stutzman*, 46 S.W.3d 829, 846–47 (Tex. 2000) (in manufacturing defect case brought against manufacturer of military helicopter part, disagreeing that refusal to submit defense to jury was reversible error); *Augustine v. Bell Helicopter Textron, Inc.*, 922 S.W.2d 287, 291 (Tex. App.—Fort Worth 1996, writ denied) (in design defect case brought against designer of military helicopter part, concluding fact issues existed precluding summary judgment on defense); *Feldman v. Kohler Co.*, 918 S.W.2d 615, 620 (Tex. App.—El Paso 1996, writ denied) ("[T]he government contractor defense . . . is predicated upon the notion that state law tort actions can significantly conflict with the federal government's unique role as the procurer of weapons systems."). Moreover, Brown & Gay did not argue immunity based on this defense in its plea, and in *Ackerson*, the Fifth Circuit held that the government-contractor defense does not sound in governmental immunity and is not jurisdictional in nature. 589 F.3d at 207–08.

[11] Both MSE and Brown & Gay presented a variant of this argument in their pleas, relying on *Ross* for the proposition that Texas courts hold private entities such as MSE and Brown & Gay to be governmental employees. However, MSE failed to include any discussion of *Ross* in its appellate brief and, unlike Brown & Gay, did not argue that because MSE functioned as a governmental agent, it thus should share FBCTRA's governmental immunity. In any event, the same analysis would preclude MSE from relying on *Ross* to bypass its requirement to show that FBCTRA had the legal right to control its work per the TTCA's definition of governmental employee.

contention that it need not meet the "right to control" test fails. In *First City*, the City of Houston and Houston Independent School District (HISD) brought a delinquent property tax collection suit against the record property owner and the bank holding a lien on the property. The bank filed a counterclaim against the City, HISD, and the law firm representing the City and HISD, seeking compliance with the terms of an accord and satisfaction. The First Court of Appeals addressed whether the private law firm was liable for the bank's attorney's fees. 827 S.W.2d 462, 479 (Tex. App.—Houston [1st Dist.] 1992, writ denied). The court determined that the fees were not recoverable as a matter of public policy because the law firm as the government's agent was performing the governmental function of collecting tax revenue. *Id.* at 481 (discussing section 101.055[12] of TTCA). That is, the firm was acting as a "delinquent collecting agent of the taxing units," legally authorized to prosecute suits on behalf of the City and HISD. *Id.* at 480–81 (discussing TEX. TAX CODE ANN. § 33.41 and TEX. R. CIV. P. 7).

In *Ross*, after a final judgment had been rendered against it for delinquent property taxes, taxpayer plaintiff brought suit against Fort Bend County, Fort Bend Independent School District, the City of Sugar Land, and the law firm representing the taxing units for claims in connection with the tax collection process. The law firm filed a plea to the jurisdiction and motion for summary judgment based on governmental immunity. The plaintiff argued that the firm failed to prove it was an employee rather than an independent contractor under the TTCA. However, in her petition, the plaintiff alleged that the law firm and its employees were "agents" of the governmental units. 333 S.W.3d 736, 742 (Tex. App.—Houston [1st Dist.]

---

[12] TEX. CIV. PRAC. & REM. CODE ANN. § 101.055(1) (West 2012 ) ("This chapter does not apply to a claim arising: (1) in connection with the assessment or collection of taxes by a governmental unit[.]").

17

2010, no pet.). Nor did she assert facts to otherwise show the taxing entities had the legal right to control the details of the firm's tax collection work. *Id.* Ultimately, the court concluded that, just as in *First City*, imposing liability on the law firm for actions taken while performing the governmental function of collecting taxes would offend public policy. *Ross*, 333 S.W.3d at 746–47.

Neither *First City* nor *Ross* stands for the proposition that Brown & Gay can bypass its requirement to prove it meets the statutory definition of "employee" under section 101.001(2). Moreover, *First City* and *Ross* are distinguishable because they involved situations where private law firms were representing governmental taxing units in statutorily-authorized court proceedings for the collection of delinquent property taxes. There was no question that the firms were acting as disclosed agents on behalf of the taxing entities. Further, in *Ross*, the plaintiff herself pleaded that the law firm was a governmental agent. In contrast, this case does not involve any actions taken in connection with delinquent property tax collection. And unlike in *First City* and *Ross*, where the firms and attorneys were prosecuting governmental tax collection pursuant to section 33.41 of the Tax Code, Brown & Gay has not asserted, and we have not located, any "legal authorization" for engineering firms to perform any governmental functions as governmental agents. Nor did appellants allege that Brown & Gay was acting as FBCTRA's agent. Rather, appellants pleaded that engineering company Brown & Gay was negligent in performing its design work and breached its engineering standard of care.

## 2. Application of the "right to control" test to Brown & Gay

Aside from the narrow context of governmental agents prosecuting tax delinquency suits, Texas courts have applied the traditional "right to control" factors to determine whether a worker is an employee or an independent contractor

18

in the context of the TTCA. *Bishop*, 156 S.W.3d at 584–85 (concluding play director and wife were independent contractors, not employees, such that university did not waive immunity per section 101.021(2)); *EPGT Pipeline*, 176 S.W.3d at 336–37 (concluding third-party contractor was independent contractor, not employee, such that flood control district did not waive immunity per section 101.021(1)[13]). Thus, to meet the statutory definition of governmental employee under the TTCA, Brown & Gay must show that it is in the paid service of a governmental unit[14] *and* that it is not an independent contractor, agent or employee of an independent contractor, or someone who performs tasks the details of which the governmental unit does not have a legal right to control. TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2).

When we apply the right-to-control test to the evidence here, we conclude that it conclusively shows Brown & Gay to be an independent contractor for FBCTRA.

### a. Independent nature of business

Here, Brown & Gay, a private Texas engineering firm, was to perform the "specialized task" of providing engineering services for the Tollway project—adhering to professional engineering standards—under its contract with FBCTRA. *See Bishop*, 156 S.W.3d at 585.

### b. Obligation to furnish tools, supplies, and material

---

[13] TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1) (West 2012) ("A governmental unit in the state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law[.]").

[14] Appellants do not dispute that FBCTRA paid both MSE and Brown & Gay for work performed under their respective contracts.

The engineering services contract provides that Brown & Gay would supply its own personnel, equipment, supplies, and materials,[15] and its own insurance,[16] including worker's compensation, commercial general liability, business automobile liability, umbrella excess liability, and professional liability. Brown & Gay also had to represent that it presently had, or could obtain, adequate qualified employees to work on the project. While FBCTRA could remove Brown & Gay engineers from the Tollway project, this power was narrowly limited to removal of those engineers who are "incompetent or by [their] conduct become[] detrimental to the Project." *See Bishop*, 156 S.W.3d at 585 (concluding that university's ability to terminate play director and wife if they "refused to comply with a demand demonstrates only a minimal degree of control that exists in any working relationship and is no evidence of a level of control detailed enough to indicate employee status"); *EPGT Pipeline*, 176 S.W.3d at 337 ("[T]he fact that the [county] engineer reserved the right to ask [contractor] to remove an objectionable worker does not mean that [flood control district] controlled the details of [contractor's] work.").

### c. Right to control progress of the work

The contract provides that Brown & Gay would perform its services under FBCTRA's "supervision," but this "indicate[s] control over the general requirements of the project, and its proper completion," rather than the right to control the details of Brown & Gay's engineering work. *See EPGT Pipeline*, 176 S.W.3d at 337. Gehbauer testified that Brown & Gay employees held sole responsibility for the traffic engineering and signage for the Tollway project; and

---

[15] *See Bishop*, 156 S.W.3d at 585 (director and wife furnished own props); *EPGT Pipeline*, 176 S.W.3d at 336 (contractor furnished own equipment and supplies, including vehicle at issue).

[16] *See Limestone*, 71 S.W.3d at 312 (driver furnished own insurance on his truck).

Gehbauer indicated he was in charge of reviewing the work that Mendoza, the "lead" of Brown & Gay's traffic group, prepared. This testimony indicates that Brown & Gay controlled the progress of its own engineering work. Moreover, as discussed above, that FBCTRA's board had to approve Brown & Gay's Tollway project work product does not mean FBCTRA had a right to control the details of how Brown & Gay accomplished its work. *See Bishop*, 156 S.W.3d at 585; *Limestone*, 71 S.W.3d at 312.

Further, we similarly discount Gehbauer's statements in his affidavit that "[a]t all times, [Brown & Gay's] activities and work concerning the [Tollway] Project were controlled by the FBCTRA" and that "[a]ll of the work performed by [Brown & Gay] in connection with the [Tollway] project occurred . . . under the control and supervision of the FBCTRA," as conclusory statements unsupported by any underlying facts. *See Dolcefino*, 19 S.W.3d at 930. Gehbauer completely fails to provide any specific instances or examples of conduct by FBCTRA whereby FBCTRA exercised actual control over the details of Brown & Gay's engineering work during the Tollway project. *See CA Partners*, 274 S.W.3d at 64. Gehbauer's conclusory statements are not evidence and do not raise any fact issue on FBCTRA's right to control. *See Coastal*, 136 S.W.3d at 232–33 ("[B]are conclusions—even if unobjected to—cannot constitute probative evidence."); *Ryland*, 924 S.W.2d at 122.

### d.  Time of employment

According to the contract, FBCTRA was hiring Brown & Gay for a set amount of time, i.e., the amount of time it took for the Tollway project to be completed. Brown & Gay thus only had an obligation to perform through "Contract Closeout" of the Tollway project.

### e.  Method of payment, whether by time or by the job

21

Although the contract provides that Brown & Gay engineers working on the Tollway project would be paid hourly, such hourly payment falls within the overall context of one specific project, or "job"—the construction of a particular segment of the Tollway. *See Bishop*, 156 S.W.3d at 585. This job had an overall budget for payment to Brown & Gay of just over $4 million.

### 3. Thus, Brown & Gay has not shown itself to be a governmental employee per the TTCA.

Finally, we find the First Court of Appeals' "right to control" analysis in *EPGT Pipeline* instructive. There, plaintiff pipeline company EPGT brought various negligence claims against Harris County Flood Control District (HCFCD) for damage to its pipeline that occurred when Ramex, a third-party contractor, was removing culverts in a bayou to improve drainage, pursuant to a construction contract between Ramex and HCFCD. The TTCA waives governmental immunity for injury caused by government employees' use of motor vehicles when the employee would be personally liable under Texas law. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(1). HCFCD moved for summary judgment based on governmental immunity. EPGT argued that Ramex was a government employee under section 101.001(2) of the TTCA and therefore HCFCD waived immunity for Ramex's actions. HCFCD presented evidence that Ramex furnished its own equipment and supplies, Ramex was hired for the job through a bid process, Ramex was paid by the job, according to its bid, and a Ramex employee testified Ramex determined the means and methods to remove the culverts. Even though EPGT argued that HCFCD personnel participated in construction plans and specifications; certain contract provisions indicated that a county engineer could "furnish specifications to, supervise, and ask Ramex to discharge, any Ramex employees who do not 'perform work in a proper and skillful manner'"; and HCFCD provided Ramex with a project specification manual, the court concluded

22

that this evidence did not create a fact issue that HDFCD had a right to control, or exercised control over, the details of Ramex's work. *EPGT Pipeline*, 176 S.W.3d at 337–38. The court thus affirmed summary judgment in favor of HCFCD, concluding that the undisputed, controlling facts indicated Ramex was an independent contractor as a matter of law. *Id.* at 336–38. Comparing the undisputed evidence here to that in *EPGT Pipeline*, it similarly fails to prove as a matter of law any "legal right to control" by FBCTRA for Brown & Gay to qualify as a governmental employee under the TTCA. *See* TEX. CIV. PRAC. & REM. CODE § 101.001(2).

After reviewing the record evidence in the light most favorable to appellants and drawing all reasonable inferences in their favor, we conclude that Brown & Gay did not discharge its burden to present conclusive facts regarding FBCTRA's right to control the details of Brown & Gay's work sufficient to negate subject-matter jurisdiction. *See Miranda*, 133 S.W.3d at 227–28. Further, because the controlling facts are undisputed and only one reasonable conclusion can be inferred, we conclude as a matter of law that Brown & Gay's relationship with FBCTRA is that of an independent contractor. *See Bishop*, 156 S.W.3d at 585; *EPGT Pipeline*, 176 S.W.3d at 338. Therefore, we also sustain appellants' second issue.

## V.  CONCLUSION

Accordingly, having sustained both of appellants' issues, we reverse the trial court's orders granting MSE's and Brown & Gay's pleas to the jurisdiction and remand for further proceedings consistent with this opinion.

/s/    Tracy Christopher
Justice

Panel consists of Justices Boyce, Christopher, and Jamison.

23