**Reversed and Rendered and Opinion filed August 1, 2013.**



In The

# Fourteenth Court of Appeals

NO. 14-12-00458-CV
NO. 14-12-00459-CV

**THE CITY OF HOUSTON, Appellant**

**V.**

**MARIA ZUNIGA RANJEL, INDIVIDUALLY, AND AS GUARDIAN OF THE PERSON AND THE ESTATE OF JUAN MANUEL CORDERO, AN INCAPACIATATED PERSON, AND JEANIE TURNER, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF TRAVIS KELLY TURNER, DECEASED, NATHAN TURNER, INDIVIDUALLY, DERRICK TURNER, INDIVIDUALLY, AND JOHNSON CONTROLS, INC., Appellees**

**On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Cause Nos. 401,097 & 402,404-401**

## O P I N I O N

The City of Houston brings this interlocutory appeal from the trial court's denial of its plea to the jurisdiction filed in two consolidated cases arising out of

the same incident at Bush Intercontinental Airport (the Airport). Houston contends the trial court erred when it denied Houston's plea to the jurisdiction because appellees failed to raise a fact issue that Houston waived its governmental immunity. We conclude that the Texas Tort Claims Act does not waive Houston's immunity because neither the pleadings nor the jurisdictional evidence show that a Houston employee was operating or using the motor-driven equipment and tangible personal property that caused the incident. Accordingly, we reverse and render judgment dismissing appellees' claims against Houston for want of jurisdiction.

## BACKGROUND

### A. The APM strikes Turner and Cordero.

Houston owns and operates the Airport, which includes an automated people mover or APM system. The APM is a remotely controlled, above-ground train that transports passengers along elevated guideways from terminal to terminal. Because Houston and its employees do not possess the knowledge to operate and maintain the APM, Houston has always retained a third party to perform these functions. At all times relevant to this appeal, the third-party operator was appellee Johnson Controls, Inc.

Houston decided to expand the APM system at the Airport. This expansion was called the Phase 3 Project and it included the construction of an additional APM guideway connecting Terminals B and C at the Airport. Houston contracted with Continental Airlines, Inc. to manage the Phase 3 Project. Among the companies involved in the Phase 3 Project were Post, Buckley, Schuh & Jernigan, Inc. (PBS&J) and Webber, L.L.C. When the Phase 3 Project reached substantial completion, the new guideway was turned over to Johnson Controls for inclusion under its contract with Houston to operate and maintain the APM System. It is

2

undisputed that once the new guideway was turned over to Johnson Controls, Johnson Controls controlled access to the guideway. Even after the guideway was turned over, however, punch-list items remained to be completed on the Phase 3 Project.

On October 26, 2010, a Johnson Controls employee, James Farr, escorted Juan Cordero and two other Webber employees into an area of the new guideway where trains were not allowed due to the ongoing work. They were later joined at the worksite by Travis Turner, a senior project manager for PBS&J. At some point, Farr left the worksite. According to Nicolas Wilhite, another Johnson Controls employee, Cordero, Turner, and the other contractors were supposed to be working only in the maintenance area that was not part of the active line and was not activated that morning. A few hours after arriving in the work area, Turner and Cordero walked onto a part of the guideway where the trains were running and they were struck by a train that was in regular service between terminals. Turner died as a result of his injuries and Cordero suffered incapacitating injuries.

## B. The Turner and Cordero appellees sue Houston.

The Turner appellees—Jeanie Turner, individually and as representative of Turner's estate; Nathan Turner; and Derrick Turner—filed suit against Houston and numerous other defendants. In their third amended petition, the Turner appellees alleged that Houston and its employees contributed to the accident that caused Turner's death by negligently failing to provide a safe operating APM system. They then alleged that Houston's negligent acts included, but were not limited to (1) the failure of Houston's "employees to establish and/or communicate safety requirements regarding the APM system" and (2) the "failure of its employees to implement adequate safeguards to prevent incidents such as the subject incident from occurring."

3

Appellee Maria Ranjel filed suit against Houston and other defendants individually and on behalf of Cordero. In her first amended petition, Ranjel alleged that Houston, "by and through its employees, committed acts of omission and commission, which collectively and severally constituted negligence, and which were proximate causes of the injuries sustained by . . . Cordero." She also alleged that Houston had a duty to Cordero to provide a safe operating inter-terminal train system and APM. She went on to allege that Houston's negligent acts included (1) "the failure of its employees to establish and/or communicate safety requirements for the APM train system" and (2) "the failure of its employees to implement adequate safeguards to prevent incidents from occurring, such as the subject incident."

Johnson Controls filed a cross-claim for contribution and proportionate responsibility against Houston. Johnson Controls later admitted that its cross-claim is derivative of the Turner and Cordero appellees' rights to recover against Houston.

### C. Houston files a plea to the jurisdiction, and all parties submit evidence regarding jurisdiction.

The lawsuits were eventually consolidated and Houston filed a single plea to the jurisdiction, arguing the Turner and Cordero appellees had not alleged a cause of action against Houston that falls within the scope of a waiver of its governmental immunity. Houston's principal argument was that appellees did not allege a Houston employee used or operated the train in a negligent manner. Accordingly, Houston contends that its immunity remained intact, the trial court did not have subject matter jurisdiction, and appellees' claims (including Johnson Controls' derivative claims) must be dismissed.

In addition to challenging appellees' pleadings, Houston attached evidence

4

to its plea to the jurisdiction challenging the existence of the jurisdictional facts alleged by appellees. In turn, appellees attached evidence as well as proposed amended petitions to their responses to Houston's plea. The evidence submitted by the respective parties, consisting of excerpts from six depositions, is undisputed.[1] The evidence falls into three general categories: (1) operation and maintenance of the APM system on a day-to-day basis; (2) development of policies related to the operation and maintenance of the APM system; and (3) Houston's involvement in the APM system the day of the fatal train strike at issue.

### 1. Operation and maintenance of the APM system

The evidence shows that Houston owned the APM system but did not operate or maintain it on a day-to-day basis because its employees lacked the knowledge and expertise to do so. At all times relevant to this appeal, Houston contracted with Johnson Controls to operate and maintain the APM system.[2] Control of the APM extension built in the Phase 3 Project had been turned over to Johnson Controls prior to the train strike involved in this appeal.

While the APM system contract between Johnson Controls and Houston

---

[1] The excerpts came from the depositions of the following witnesses:

(1) Dominick Trupia: a PBS&J employee.

(2) Scott Galliher: the corporate representative of Johnson Controls.

(3) Elesa Rodriquez: Houston employee who oversaw the contract whereby Johnson Controls operated and maintained the APM.

(4) James Farr: Johnson Controls employee who escorted Cordero and Turner to the guideway the day of the incident.

(5) Brandon Shimer: employee of an unknown entity involved in the Phase 3 Project. While Houston contends Shimer is a Continental employee, nothing in the appellate record verifies his employment status.

(6) Nicolas Wilhite: Johnson Controls employee present the day of the incident that resulted in Turner's death and Cordero's incapacitating injuries.

[2] Johnson Controls did not have a Phase 3 Project contract, however.

does not appear in the appellate record, several witnesses testified regarding its content and the respective roles of Johnson Controls and Houston. According to this testimony, the contract determined how many trains were to be operating on a daily basis and provided that Johnson Controls, pursuant to the contract, remotely operated the trains on a daily basis from a Control Center. The evidence is undisputed that Houston had no involvement in the daily operation of the trains and that it monitored the APM system to ensure Johnson Controls followed the contract. The evidence also shows that no Houston employees worked in the Control Center.

Under the contract, Houston could give Johnson Controls permission to operate the APM System with a reduced number of trains. In addition, Houston could shut down the APM System by shutting down electrical main feed systems for the Airport. Beyond that, the evidence shows that Houston had no ability to directly affect the daily operation of trains on the APM guideway. To do that, Houston had to go through Johnson Controls personnel in the Control Center.

### 2.    *Development of policies related to the operation and maintenance of the APM system*

The evidence is undisputed that Houston never directly provided Johnson Controls a set of safety rules and regulations for the APM System. Instead, Johnson Controls had the authority to enact site policies and procedures without getting Houston's approval. Houston did request input into the development of site policies and according to Rodriquez, the Houston employee charged with overseeing the contract with Johnson Controls, Houston did participate in the formulation of policies related to accessing the APM guideway.

Farr testified that any person not an employee of Johnson Controls (hereinafter, a "non-employee") needing access to the APM guideway had to first

6

go through Houston. Houston employees would verify the non-employee's need to access the guideway and would then send the request to Johnson Controls. According to Scott Galliher, Johnson Controls' corporate representative, Johnson Controls could then grant or deny the request for access. Galliher also testified that Houston could override Johnson Controls' decision, but he did not specify under what circumstances that override authority could be exercised or if Houston had ever exercised it. According to Galliher, Johnson Controls expected Houston to give any contractors needing access to the guideway written guidelines. He also testified that Johnson Controls personnel were expected to ascertain whether those contractors understood those guidelines. In addition, Nicolas Wilhite testified that whenever a crew was going to be working on a repair of the main line, Johnson Controls would determine what was going to happen with the job and what those workers needed to do to perform the job safely.

Finally, it is undisputed that the APM guideway was elevated and the only way to access it was by using an elevator. To access the guideway, a non-employee had to be let into the elevator by a Johnson Controls employee with a keycard and then escorted to the worksite.[3]

### 3. *Houston's involvement in the APM system on the day of the train strike*

The evidence submitted by the parties shows that there were no Houston employees regularly working in the Control Center. It is also undisputed that at the time of the train strike and immediately beforehand, there were no Houston employees present in the Control Center or in the area of the guideway where the strike occurred.

---

[3] The evidence indicates that certain unspecified Houston employees also had keycards and had used them to access the guideway at times without Johnson Controls personnel being present.

**D.    The  appellees propose amended pleadings.**

Both the Turner and Cordero appellees attached proposed amended petitions to their responses to Houston's plea.  Both also stated in their responses that the proposed amended petitions cured any conceivable pleading defects.

### 1.    *The Cordero appellees' proposed second amended petition*

In their proposed second amended petition, the Cordero appellees alleged that Houston owns and operates the Airport and owed a duty to provide a safe operating APM.  They further alleged that the APM "is motor-driven equipment, tangible property, which was in operation or use on October 26, 2010, and which operation or use was a cause of . . . Cordero's injuries."  In addition to the allegations previously made in their first amended petition, the Cordero appellees alleged that Houston was negligent for "failing to safely maintain, operate, and/or control the operation of the APM."  Finally, they alleged that these acts were carried out by Houston employees during the course and scope of their employment with Houston.

### 2.    *The Turner appellees' proposed fourth amended petition*

In their proposed fourth amended petition, the Turner appellees alleged that Houston owns and runs the APM system at the Airport and the "APM is motor-driven equipment, tangible property, and was in operation and/or use at the time of the subject incident."  In addition to their previous allegations, they alleged that Houston, "by and through its employees, owed a duty to others, including . . . Turner, to provide a safe operating inter-terminal train system (APM)" and Houston's negligent acts included "[f]ailure to safely maintain, operate, and/or control the operation of the APM and/or the APM system."  Finally, the Turner appellees alleged that these negligent acts were carried out by

Houston employees during the course and scope of their employment with Houston.

**E.     The trial court denies Houston's plea to the jurisdiction.**

The parties participated in a hearing during which the trial court orally denied Houston's plea to the jurisdiction.  This interlocutory appeal followed the trial court's subsequent signing of a written order denying Houston's plea.

ANALYSIS

In three issues on appeal, Houston contends the trial court erred in denying the plea to the jurisdiction because the jurisdictional evidence established as a matter of law that Houston did not operate or maintain the APM System and therefore Houston's immunity has not been waived.  As a result, Houston asserts, we should reverse the trial court's denial of the plea and then dismiss appellees' suits because remanding to give the Turner and Cordero appellees another opportunity to amend their petitions would be futile.  In its fourth issue on appeal, Houston asserts that because it is undisputed Johnson Controls' cross-claim is derivative of the Turner and Cordero appellees' claims for which Houston's immunity has not been waived, the trial court also erred when it denied Houston's plea to the jurisdiction as to that cross-claim.

**I.     Standard of review**

If a governmental unit has immunity from suit, a trial court lacks subject matter jurisdiction.  *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012).  A challenge to a trial court's subject matter jurisdiction may be asserted by a plea to the jurisdiction. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004).  We review a trial court's ruling on a plea to the jurisdiction de novo.  *Id.* at 228.

9

A governmental unit's plea to the jurisdiction may challenge either the plaintiffs' pleadings or the existence of jurisdictional facts. *Id.* at 226–27. When, as here, the governmental unit challenges the existence of jurisdictional facts, and the parties submit evidence relevant to the jurisdictional challenge, we must consider that evidence when necessary to resolve the jurisdictional issues raised. *Id.* at 227–28; *Olivares v. Brown & Gay Eng'g, Inc.*, No. 14-12-00198-CV, 2013 WL 1775998, at *3 (Tex. App.—Houston [14th Dist.] April 25, 2013, no pet.); *see Perez v. City of Dallas*, 180 S.W.3d 906, 913 (Tex. App.—Dallas 2005, no pet.) (examining the jurisdictional evidence submitted by both parties in the litigation to resolve the governmental unit's plea to the jurisdiction). If the evidence raises a fact issue as to jurisdiction, the governmental unit's plea must be denied because the issue must be resolved by the trier of fact. *Miranda*, 133 S.W.3d at 227–28. If the relevant evidence is undisputed or fails to present a jurisdictional fact issue, however, the court should rule on the plea as a matter of law. *Id.*

## II.    Waiver of governmental immunity under the Texas Tort Claims Act

Houston, as a municipality and political subdivision of the State, is immune from suit in the performance of its governmental functions unless that immunity has been waived.[4] *Tooke v. City of Mexia*, 197 S.W.3d 325, 343–44 (Tex. 2006); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003). The Texas Tort Claims Act ("TTCA") includes the following waiver of governmental immunity:

A governmental unit in the state is liable for:

(1)  property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

---

[4] The parties do not dispute that the operation of the Airport and the APM system are governmental functions.

(A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

(B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal property or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (West 2005).

The Turner and Cordero appellees alleged Houston's immunity was waived under both subsections 1 and 2 of section 101.021 as a result of Houston's negligent failure to safely operate, control, or maintain the APM.[5] On appeal, Houston does not dispute that the APM that struck Turner and Cordero was motor-driven equipment and tangible personal property for purposes of these subsections.

For waiver to exist under either subsection, however, a governmental employee must be the one operating or using the motor-driven equipment or tangible personal property.[6] *See DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995) ("Consistent with subsection 1, we construe subsection 2 of section 101.021 to predicate the governmental unit's respondeat superior liability upon the liability of its employee."); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) (holding under subsection 1 that "the required operation

---

[5] The Turner and Cordero appellees do not assert a waiver of immunity under any other statute.

[6] Subsection 2 of section 101.021 also provides a waiver of immunity for certain causes of action brought against the governmental unit directly, rather than under a theory of respondeat superior. In this case, however, appellees have not alleged a direct liability cause of action. *Cf. DeWitt v. Harris County*, 904 S.W.2d 650, 653 (Tex. 1995) ("With premises defects, liability is predicated not upon the actions of the governmental unit's employees but by reference to the duty of care owed by the governmental unit to the claimant for premises and special defects as specified in section 101.022 of the Texas Tort Claims Act.").

11

or use is that of the employee"); *Univ. of Tex. Health Science Ctr. v. Schroeder*, 190 S.W.3d 102, 106 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("Although the term 'paid employee' is not contained within subsection two, the Supreme Court of Texas has interpreted subsection two of section 101.021 to require that a governmental employee use the tangible personal property.") (citing *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004)). Thus, the argument that Houston owed and breached a duty to provide a safe operating APM system does not establish a waiver of Houston's immunity.

## III. The undisputed jurisdictional evidence establishes as a matter of law that Houston's governmental immunity has not been waived.

Appellees assert the requirement of operation or use by a Houston employee is met here for two reasons. First, citing *County of Galveston v. Morgan*, 882 S.W.2d 485, 490 (Tex. App.—Houston [14th Dist.] 1994, writ denied), and *City of El Campo v. Rubio*, 980 S.W.2d 943, 944 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.), appellees contend there is at least a fact issue as to whether a Houston employee operated or used the APM that struck Turner and Cordero. Second, citing section 101.001(2) of the TTCA, appellees contend Johnson Controls should be considered a Houston employee because Houston controlled the details of Johnson Controls' work. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2) (West 2005). Given the undisputed jurisdictional evidence offered by the parties, we conclude that neither contention establishes a waiver of Houston's immunity.

### A. A Houston employee did not operate or use the APM that struck Turner and Cordero.

We turn first to appellees' contention that in this case, as with the governmental entities in *Morgan* and *Rubio*, the jurisdictional evidence raised at least a fact issue that a Houston employee operated or used the APM that struck

Turner and Cordero.  We disagree.

In *Morgan*, Galveston County supplied employee spotters to direct dump trucks at a work site with overhead power lines.  *Morgan*, 882 S.W.2d at 487–88. The spotters directed the drivers of the dump trucks where to move and when to stop, as well as on the raising and lowering of the dump trucks' beds.  *Id.* at 490. The dump truck drivers could be fired if they disobeyed the directions of the county spotters.  *Id.*  This Court held that Galveston County's immunity had been waived under the TTCA after a county spotter directed a dump truck too close to one of the power lines and Morgan, an employee of the dump truck company, received an electrical shock.  *Id.* at 490–91.  In concluding the county spotters used or operated the dump trucks as required to waive immunity under the TTCA, this Court emphasized the spotters' sole discretion over the trucks' operations and the fact that a driver could be fired for disobeying a spotter's directions.  *Id.* at 490.

In *Rubio*, the plaintiffs alleged that a police officer arrested the driver of their van, gave rudimentary driving instructions to an unlicensed van passenger, and ordered that passenger to follow his police vehicle's emergency lights to the police station.  *Rubio*, 980 S.W.2d at 944.  When the passenger followed the police officer onto the highway, the van was struck by another vehicle.  *Id.*  The court of appeals held that the governmental unit's immunity had been waived because the police officer used or operated the van by exercising control over it.  *Id.* at 947.

We conclude that the *Morgan* and *Rubio* cases do not support a waiver of immunity in this case because there is no evidence that Houston employees exercised such direct and mandatory control over the APM that struck Turner and Cordero.  *See Townsend v. City of Alvin*, No. 14-05-00915-CV, 2006 WL 2345922, at *3 (Tex. App.—Houston [14th Dist.] Aug. 15, 2006, no pet.) (mem. op.).  To the contrary, the undisputed evidence recounted above shows that Houston contracted

with Johnson Controls to operate and maintain the APM system, that no Houston employees were present in the APM System Control Room or at the actual scene of the train strike on the day it occurred, and that Houston had no ability or contractual authority to control directly the operation or use of the APM trains.

## B. Johnson Controls was an independent contractor, not an employee of Houston.

Appellees also assert that Johnson Controls should be considered an employee of Houston because Houston controlled the details of Johnson Controls' operation and maintenance of the APM system. Because undisputed evidence shows that Johnson Controls was an independent contractor and not an employee, we disagree.

The TTCA defines an "employee" as "a person . . . who is in the paid service of a governmental unit . . . but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control." Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2). The statutory definition requires both control and paid employment to invoke the TTCA waiver of immunity. *Olivares*, 2013 WL 1775998, at *2.

An independent contractor is one who, in pursuit of an independent business, undertakes specific work for another using his own means and methods without submitting to the control of the other person as to the details of the work. *Id.* Conversely, an employer controls not only the end sought to be accomplished, but also the manner and means by which the end result is obtained. *Id.* In determining whether a person qualifies as an employee or is instead an independent contractor, the focus is on who has the right to control the details of the work. *Id.* A "possibility" of control is not evidence of a right to control. *EPGT Tex. Pipeline,*

14

*L.P. v. Harris Cty. Flood Control Dist.*, 176 S.W.3d 330, 336 (Tex. App.—Houston [1st Dist.] 2004, pet. dism'd) (citing *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999)). The type of control necessary to establish employee status for waiver-of-immunity purposes is control over the details of the operation or use of the motor-driven equipment or tangible personal property. *Id.* at 337.

A party can prove right to control in two ways. First, right to control can be shown through a contractual agreement that explicitly assigns the right to control. *Olivares*, 2013 WL 1775998, at *2. Second, when the contract between the parties is absent (as it is here), employee status can be shown through evidence of actual control over the manner in which the work was performed. *Id.* (citing *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002)). A worker is an employee rather than an independent contractor if the governmental unit has the right to control the progress, details, and methods of operation of the work, considering: (1) the independent nature of the business; (2) the obligation to furnish the tools, supplies, and materials necessary to perform the job; (3) the right to control the progress of the work except about final results; (4) the time for which the worker is employed; and (5) the method of payment, whether by unit of time or by the job. *Texas A & M Univ. v. Bishop*, 156 S.W.3d 580, 584–85 (Tex. 2005); *Dalehite v. Nauta*, 79 S.W.3d 243, 245 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). When the material underlying facts are not in dispute and can give rise to only one reasonable conclusion, the question whether a worker is an employee or an independent contractor is a question of law. *Bishop*, 156 S.W.3d at 585. Like *Bishop*, this is such a case.

Appellees argue the jurisdictional evidence raises fact issues as to whether Houston exercised sufficient control over the details of Johnson Controls'

operation and maintenance of the APM System to make Johnson Controls a Houston employee. Specifically, appellees point to the following evidence: (1) Houston owned the APM system; (2) Houston retained an "exclusive ability" to "withdraw the specific power source by which the APM" system operated by disconnecting the main airport electrical feed lines; (3) testimony by Houston employee Rodriguez that there were performance benchmarks in the contract between Houston and Johnson Controls, and Houston's payments to Johnson Controls could be affected by Johnson Controls' failure to meet those benchmarks; (4) Rodriguez's testimony that the contract between Houston and Johnson Controls set the operating hours for the APM system and gave Houston the authority to allow Johnson Controls to operate the APM system in reduced modes such as a single shuttle mode; (5) Rodriguez's testimony that she participated in and oversaw the APM system contract;[7] (6) Houston had the contractual authority to instruct Johnson Controls' operators to hold a train in a station while a contractor accessed the guideway to perform work; and (7) Houston, along with several other entities involved in the Phase 3 Project, participated in formulating the policy for requesting access to the active APM system when the Phase 3 Project reached the point where workers would need access to the active guideway.

We conclude that even when viewed in the light most favorable to appellees, this evidence does not raise a fact issue as to whether Johnson Controls was an employee rather than an independent contractor. Houston's mere ownership of the APM system does not demonstrate that Johnson Controls operated that system as an employee rather than an independent contractor. *See Bishop*, 156 S.W.3d at

---

[7] Throughout their briefs, appellees summarize Rodriguez's testimony incorrectly. For example, instead of stating that Rodriguez testified that, as a project manager for Houston, she oversaw "the daily operation and maintenance contract," appellees incorrectly assert that she oversaw "the APM system."

584–85 (holding that directors of student play were independent contractors rather than employees after applying right-to-control factors even though the stabbing incident occurred on the Texas A & M campus); *see also Olivares*, 2013 WL 1775998, at * 9–10 (applying right-to-control factors to determine whether an engineering firm performing services on a county-owned toll road was an independent contractor or an employee of the county); *EPGT Tex. Pipeline, L.P.*, 176 S.W.3d at 335–38 (applying right-to-control factors to determine whether construction company working on a flood control district project was an independent contractor or a government employee). While there is also evidence that Houston had the contractual authority to instruct Johnson Controls to hold trains in the station and participated in the formulation of the policy governing access to the APM guideway, this evidence does not establish the level of control necessary to make Johnson Controls an employee. *See Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 702 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (stating that requiring an independent contractor to abide by a premises owner's safety rules and regulations and retaining the authority to preclude work from beginning or stop work once it has begun does not establish actual control).

The remaining evidence cited by appellees does nothing more than establish that Houston controlled the end result of Johnson Controls' contractual duty to operate and maintain the APM system, which is insufficient to demonstrate the level of control over the details of the daily operation of the trains necessary to make Johnson Controls an employee. *See Olivares*, 2013 WL 1775998, at *5 (holding evidence that governmental unit retained final approval over decisions and actions on construction of highway established only control over the end results of contractor's work); *see also EPGT Tex. Pipeline, L.P.*, 176 S.W.3d at 337 ("These contract provisions . . . indicate control over the general requirements

of the projects, and its proper completion, but do not show control over the details of Ramex's work with regard to Ramex employees use of motor-driven vehicles—the standard for determining whether a party is an employee or independent contractor within the scope of section 101.021."). Instead, we conclude the undisputed jurisdictional evidence establishes that Houston did not retain a legal right to control the details of Johnson Controls' operation and maintenance of the APM System, and therefore Johnson Controls was an independent contractor. *See Olivares*, 2013 WL 1775998, at *11; *see also EPGT Tex. Pipeline, L.P.*, 176 S.W.3d at 336–38.

Because the jurisdictional evidence establishes that a Houston employee did not operate or use the APM train that struck Turner and Cordero, we hold Houston's immunity has not been waived. We sustain Houston's third issue on appeal.[8]

## IV. Houston has not waived its immunity from Johnson Controls' cross-claim.

In its fourth issue, Houston asserts the trial court also erred when it denied Houston's plea as to Johnson Controls' cross-claim for contribution and proportionate responsibility because the cross-claim is derivative of the causes of action asserted by the Turner and Cordero appellees. We agree.

A defendant's claim of contribution is derivative of the plaintiff's right to

---

[8] We need not reach appellees' allegation that Houston employees negligently implemented an existing safety policy. Even if that allegation is true, it would establish only that the discretionary function exclusion found in section 101.056 of the TTCA does not apply. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.056 (West 2005). Appellees would still have to establish a waiver of immunity under section 101.021, which they have not done for the reasons discussed above. *Dimas v. Texas State Univ. Syst.*, 201 S.W.3d 260, 267–68 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (holding that a negligent implementation of policy theory of liability does not itself waive immunity; plaintiff must first establish a waiver of immunity under some other provision of the TTCA before he can pursue a claim of negligent implementation).

18

recover from the joint defendant against whom contribution is sought. *Shoemake v. Fogel, Ltd.*, 826 S.W.2d 933, 935 (Tex. 1992); *Prairie View A & M Univ. v. Brooks*, 180 S.W.3d 694, 702 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Therefore, the answer to the question whether Houston is immune from Johnson Controls' contribution cross-claim depends on whether Houston is immune from the claims asserted by the Turner and Cordero appellees. *City of San Antonio v. Johnson*, 103 S.W.3d 639, 642 (Tex. App.—San Antonio 2003, pet. denied). Having held that Houston is immune from the latter claims, we conclude Houston is also immune from Johnson Controls' cross-claim. *Brooks*, 180 S.W.3d at 702. We therefore sustain Houston's fourth issue.

**V.    Because a remand would be futile, appellees' claims against Houston must be dismissed.**

Having sustained Houston's third and fourth issues on appeal, we must decide whether remand, as requested by appellees, or rendition of a judgment dismissing the claims, as requested by Houston, is the appropriate remedy. Generally, an appellate court allows a litigant to amend his pleadings to cure defects when the pleadings do not allege sufficient jurisdictional facts but do not affirmatively negate jurisdiction. *Texas Dept. of Transportation v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002). Like *Ramirez*, however, this is not a pleading-defect case. *Id.*

Here, the appellate record includes not only jurisdictional evidence excerpted from numerous depositions but also proposed amended pleadings prepared by appellees after Houston filed its plea to the jurisdiction, which appellees represented were sufficient to cure any possible pleading deficiencies. Even if the appellees had filed their respective proposed amended pleadings, Houston's immunity still would not have been waived because the jurisdictional

evidence does not raise a fact issue on the key question of whether a Houston employee operated or used the APM train that struck Turner and Cordero. An additional opportunity to amend appellees' pleadings cannot change what the undisputed jurisdictional evidence has established: a Houston employee did not operate or use the APM train that struck Turner and Cordero. Because the evidence does not support further amendments that would cure this jurisdictional deficiency, we conclude it would be futile to remand this matter to the trial court to allow appellees another opportunity to amend their pleadings. *See Ramirez*, 74 S.W.3d at 867–68. Accordingly, appellees' claims against Houston must be dismissed. *See State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007).

## CONCLUSION

Having sustained Houston's third and fourth issues on appeal, we reverse the trial court's order denying Houston's plea to the jurisdiction and render judgment dismissing appellees' claims against Houston for lack of subject matter jurisdiction.


/s/    J. Brett Busby
       Justice


Panel consists of Justices Frost, Brown, and Busby.