**Affirmed and Memorandum Opinion filed February 27, 2014.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-12-00673-CV

---

## IN THE INTEREST OF K.G.S. AND T.W.S., CHILDREN.

---

**On Appeal from the 312th District Court
Harris County, Texas
Trial Court Cause No. 2009-01569A**

---

## M E M O R A N D U M   O P I N I O N

This case arises out of a suit to modify a parent-child relationship. The mother of the children affected by the suit appeals the trial court's dismissal of counterclaims she filed against the Texas Department of Family and Protective Services (TDFPS) after TDFPS intervened in the suit. Concluding that each of the mother's counterclaims is either barred by sovereign immunity or unripe, we affirm.

BACKGROUND

The children's parents divorced in 2009. The final divorce decree appointed both parents as joint managing conservators of the two children, with the mother receiving the exclusive right to designate the children's primary residence. The final divorce decree also contained a provision enjoining the parents from consuming alcohol within twenty-four hours of having possession or access to the children.

In October of 2011, TDFPS received a referral alleging that the mother was negligently supervising her children as a result of her reported alcohol abuse. A division of TDFPS, Child Protective Services (CPS), investigated the allegations. A caseworker conducted a family assessment on February 1, 2012. During the assessment, the mother admitted drinking wine every night and having used cocaine two months prior.

The father filed a petition to modify the parent-child relationship on February 6. His petition alleged a material and substantial change in circumstances since the final divorce decree, including an allegation that the mother had a history or pattern of child neglect. The father requested temporary orders appointing him as sole managing conservator and limiting the mother to supervised visitation.

Two days after the father filed his petition, the mother began receiving services from TDFPS's Family Based Safety Services. The mother voluntarily placed the children with their maternal grandmother while services were provided. The mother underwent a "drug/alcohol assessment" in which she confirmed recent cocaine use; the assessment "indicated she needed treatment." She also participated in a single therapy session, but refused recommended random drug testing and substance abuse treatment. The therapist from the session recommended that the mother's visitations remain supervised.

The mother removed the two children from their grandmother's home on March 31. Three days later, TDFPS intervened in the parents' custody dispute and requested immediate appointment as temporary sole managing conservator of the children. TDFPS's petition was accompanied by the affidavit of a CPS caseworker.

TDFPS requested that the trial court conduct a full adversary hearing and make certain temporary orders. Among other things, TDFPS asked the court to order both parents (1) to make payments for the temporary support of the children, (2) to submit to a family assessment and psychological examination, (3) to attend counseling sessions to address the specific issues that led to the children's removal, (4) to attend parenting classes as required by TDFPS, (5) to submit to a drug and alcohol assessment followed by a substance abuse treatment program if needed, and (6) to comply with each requirement set out in TDFPS's service plan during the pendency of the suit.

The mother filed counterclaims against TDFPS, as well as a motion to strike TDFPS's intervention. The original counterclaim asserted two causes of action against TDFPS. The mother sought her "actual damages" and reasonable attorney's fees under federal racketeering and civil rights statutes, as well as certain declaratory and injunctive relief. *See* 18 U.S.C. § 1964(c) (2012); 42 U.S.C. §§ 1983, 1988 (2012).

In her first cause of action, the mother sought a declaration that Rule 204.4(a) of the Texas Rules of Civil Procedure, which permits the court to order psychological examinations of the parties, violates the Fifth Amendment privilege against self-incrimination. *See* U.S. Const. amend. V. The mother further sought to enjoin CPS from compelling psychological evaluations of parents it alleges are neglecting, injuring, abusing, or sexually abusing the children who are the subject

of the suit. The mother argued she was being forced to choose between cooperating with the evaluation at the risk of incriminating herself in child abuse, or not cooperating with the evaluation at the risk of losing her children.[1]

The mother also sought declaratory and injunctive relief regarding the constitutionality of an alleged CPS policy of "demanding" that parents submit to drug testing. The mother alleged that the requests for drug testing are warrantless searches in violation of the Fourth Amendment. *See* U.S. Const. amend. IV. The mother further alleged that she was subjected to such a warrantless search.

The mother also noted that TDFPS sought to remove her children from her care, custody, and control, and to have CPS appointed temporary and permanent managing conservator of the children, which the mother alleged would have a "substantial adverse effect on [her] First Amendment right of association with her children." *See* U.S. Const. amend. I.

In a second cause of action, the mother alleged CPS was committing "Mail Fraud," *see* 18 U.S.C. § 1341 (2012), by sending pleadings and other documents soliciting child support payments in a scheme to defraud parents. The mother argued this conduct constituted a "pattern of racketeering activity" as defined in the federal Racketeer Influenced and Corrupt Organizations Act (RICO) statutes. *See* 18 U.S.C. § 1961. The mother asked the trial court to declare CPS a continuing criminal enterprise and issue appropriate orders.

On May 2, 2012, TDFPS filed an original answer to the mother's counterclaims as well as a plea to the jurisdiction. In its plea to the jurisdiction,

---

[1] During the hearings in the trial court, the mother also asserted the Fifth Amendment privilege against self-incrimination to avoid answering questions regarding whether she violated the divorce decree's provisions enjoining her from consuming alcohol within twenty-four hours of her access to the children. The trial court allowed the mother to invoke the privilege and refuse to answer those questions while on the witness stand.

4

TDFPS argued that the mother lacked standing to assert her RICO claims as well as her constitutional challenges brought under section 1983, and that it was entitled to sovereign immunity from suit. TDFPS also argued that the lack of jurisdiction over the section 1983 and RICO claims meant the court also lacked jurisdiction to issue a declaratory judgment.

On May 8, the trial court ordered the parents to report immediately to a screening center and provide hair, urine, and blood samples for drug and alcohol screening. The trial court also referred the mother to an assessment center for a forensic evaluation for alcohol abuse and cocaine and marijuana use.

The mother responded to the plea to the jurisdiction on May 12, arguing that sovereign immunity was expressly waived by statute and conduct and that state courts have concurrent jurisdiction over RICO and civil rights claims. The mother asserted that TDFPS's intervention in the suit affecting the parent-child relationship sufficed to waive sovereign immunity. She also argued that section 105.002 of the Texas Civil Practice and Remedies Code waived sovereign immunity.

Both parties filed supplemental briefing on the availability of declaratory relief. TDFPS argued that declaratory judgments are unavailable if the court does not have jurisdiction over the underlying claim. TDFPS asserted that the trial court did not have jurisdiction over the mother's underlying claims because the claims were not ripe and because it retained sovereign immunity.

TDFPS argued a Fifth Amendment claim would only be ripe if the mother, faced with "a realistic threat of self-incrimination," was required to meet with a psychologist and take drug and alcohol tests despite having invoked the privilege against self-incrimination. TDFPS argued that the mother had not identified any criminal activity in which she might incriminate herself. Thus, according to

5

TDFPS, the mother has not demonstrated that any actual injury is likely to occur.

TDFPS also argued that the mother's claims did not fit within the waiver of immunity contained in the Uniform Declaratory Judgment Act ("UDJA"), Tex. Civ. Prac. & Rem. Code §§ 37.001–.011 (West 2008), because she did not plead a viable constitutional claim. TDFPS argued that the privilege against self-incrimination does not convey a right to "wholly refuse to submit to a psychological evaluation or drug and alcohol tests." Furthermore, according to TDFPS, the privilege against self-incrimination would only preclude it from obtaining termination of parental rights *solely* because of the refusal to submit to the evaluations.

In her supplemental brief, the mother argued that because she sought a declaratory judgment that Rule 204.4(a) is unconstitutional, the UDJA waived immunity for her claim for declaratory relief.

The trial court granted TDFPS's plea to the jurisdiction and dismissed the mother's claims against TDFPS with prejudice on July 5. The mother filed a notice of accelerated appeal on July 12. On August 17, this Court issued an order, upon TDFPS's motion, abating the interlocutory appeal in order for the trial court to conduct a status hearing no later than August 24. TDFPS also filed a motion for severance in the trial court, which the court granted on October 30, making its order granting the plea to the jurisdiction a final judgment. The mother filed an amended notice of appeal, and this appeal followed.

On August 20, 2012, after the trial court granted the plea to the jurisdiction but before the severance order, the mother filed a self-styled "First Amended Counterclaim." In it, she added as counter-defendants two caseworkers for TDFPS, both individually and in their official capacities. The mother also added a request for declaratory relief regarding the constitutionality under the First

6

Amendment of a provision of the Family Code giving CPS the "right to direct the religious and moral training of her children." *See* Tex. Fam. Code Ann. § 153.371 (West 2008) (listing rights and duties of nonparents appointed temporary managing conservators).[2]

ANALYSIS

On appeal, the mother challenges the trial court's order granting TDFPS's plea to the jurisdiction and dismissing her counterclaims. The mother raises three issues: (1) whether sovereign immunity precludes declaratory and injunctive relief against the State; (2) whether the state waives sovereign immunity by intervening in a pending lawsuit and seeking affirmative relief; and (3) whether the state litigates like any other party, such that a counterclaim may be asserted against it without being barred by sovereign immunity. We consolidate her issues into one: whether the trial court erred in granting the plea to the jurisdiction.

The mother argues that the trial court erred in granting the plea to the jurisdiction because (1) sovereign immunity was waived for any counterclaims when TDFPS intervened in the suit; (2) even if sovereign immunity otherwise applied, it did not preclude her from seeking declaratory or injunctive relief against TDFPS; and (3) she was not afforded an opportunity to amend her pleadings before the plea to the jurisdiction was sustained. We consider each argument below.

## I.      Standard of review

We review de novo a trial court's order granting a plea to the jurisdiction. *Tex. Dep't of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004); *Moore v. Univ. of Houston—Clear Lake*, 165 S.W.3d 97, 101 (Tex. App.—

---

[2] The mother previously petitioned this Court for a writ of mandamus, challenging the trial court's June 25, 2012 order granting TDFPS the right "to direct the moral and religious training of the child." *In re Solley*, No. 14-12-00680-CV, 2012 WL 3135549, at *1 (Tex. App.—Houston [14th Dist.] Aug. 2, 2012, orig. proceeding) (mem. op.). We denied the petition. *Id.*

7

Houston [14th Dist.] 2005, no pet.). Where the jurisdictional challenge is based on the pleadings, we "construe the pleadings liberally in favor of the plaintiff[] and look to the pleader['s] intent." *Miranda*, 133 S.W.3d at 226; *see also Garcia v. Kubosh*, 377 S.W.3d 89, 94 (Tex. App.—Houston [1st Dist.] 2012, no pet.). Unless the pleadings "affirmatively negate the existence of jurisdiction," the plea to the jurisdiction should not be granted without allowing the plaintiffs an opportunity to amend. *Miranda*, 133 S.W.3d at 227; *City of Houston v. Ranjel*, 407 S.W.3d 880, 893 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We cannot alter even an erroneous ruling if the appellant does not assign error to it, however. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 (Tex. App.— Houston [1st Dist.] 2002, no pet.).

Where the trial court does not state the grounds upon which it grants a plea to the jurisdiction, an appellant must attack each asserted ground that could fully support the adverse ruling. *Sw. Bell Tel., L.P. v. Harris Cnty.*, 267 S.W.3d 490, 494 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Otherwise, we must presume that any assigned error would be harmless in light of the unchallenged alternative justifications for the ruling. *See id.*; *Britton*, 95 S.W.2d at 681–82.

Here, in granting TDFPS's plea to the jurisdiction, the trial court did not specify which of the three asserted grounds—sovereign immunity, standing, and ripeness—were the basis of its decision. Therefore, the mother must show that none of the asserted grounds constituted an incurable jurisdictional defect to her claims. *See Miranda*, 133 S.W.3d at 227.

## II.  The trial court properly dismissed the mother's section 1983 and RICO claims for damages because sovereign immunity bars them.

The mother argues that TDFPS voluntarily submitted to the trial court's jurisdiction by intervening in this suit, thereby waiving its sovereign immunity

from her claims seeking damages under section 1983 and RICO. She contends that Texas Rule of Civil Procedure 97(a) and (b), governing compulsory and permissive counterclaims, expressly authorizes her claims. We disagree and hold that TDFPS's immunity from her section 1983 and RICO claims has not been waived.

**A.      Neither Congress nor the Legislature has statutorily waived Texas's sovereign immunity from section 1983 or RICO claims.**

"The Eleventh Amendment to the United States Constitution protects the State of Texas from suit in its own courts for an alleged violation of federal law." *Hidalgo Cnty. v. Dyer*, 358 S.W.3d 698, 709 (Tex. App.—Corpus Christi 2011, no pet.) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989)). This immunity extends to state agencies such as TDFPS. *See San Antonio Indep. Sch. Dist. v. McKinney*, 936 S.W.2d 279, 281–82 (Tex. 1996) ("Under federal law, some state agencies exercising state power are permitted to invoke the Amendment to protect the state treasury from liability that would have had essentially the same practical consequences as a judgment against the state itself."); *see also Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997) ("This Court has long recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the State."). Although Congress has the power to abrogate state sovereign immunity under section five of the Fourteenth Amendment, it must do so with "an unequivocal expression of congressional intent." *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 240 (1985) (internal quotation marks omitted). Alternatively, the State of Texas may waive its immunity and consent to suit. *Id.* The Texas Legislature also must use "clear and unambiguous language" to waive immunity. *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 177 (Tex. 1994).

Texas's sovereign immunity has not been waived legislatively for claims brought under either of the statutes on which the mother relies. The enactment of section 1983 did not "disregard the well-established immunity of a State from being sued without its consent." *Will*, 491 U.S. at 67; *see also Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). The mother has not re-urged the appropriateness of her RICO claims on appeal, and consequently her brief does not provide any argument or authority suggesting that the RICO statutes dispensed with state sovereign immunity.[3]

Nor does Rule 97 concerning counterclaims provide a waiver. Its general language allowing a pleading to state "any claim" against "any opposing party" does not clearly and unambiguously waive sovereign immunity. *See Univ. of Tex. Med. Branch at Galveston*, 871 S.W.2d at 177.

**B.    TDFPS did not waive its sovereign immunity by intervening in the underlying custody dispute.**

The mother also argues that TDFPS waived its sovereign immunity to any counterclaim by intervening in this suit affecting the parent-child relationship. We disagree. Because the damages sought by the mother could not offset any affirmative monetary relief sought by TDFPS, we hold that TDFPS's intervention did not waive sovereign immunity.

---

[3] To the extent that courts have addressed this question, they have answered it in the negative. *See, e.g.*, *Concho Residential Servs., Inc. v. MHMR Servs. for Concho Valley*, No. 03-9800022-CV, 1999 WL 644727, at \*6 (Tex. App.—Austin 1999, pet. denied) (mem. op., not designated for publication) (RICO claims failed because appellees were "entitled to sovereign immunity from these claims"); *see also Chaz Constr., LLC v. Codell*, 137 Fed. Appx. 735, 743 (6th Cir. 2005) (not designated for publication) ("RICO does not arise under § 5 of the Fourteenth Amendment," and thus does not fall within Congress's power to waive sovereign immunity); *Weaver v. United States*, 98 F.3d 518, 521 n.2 (10th Cir. 1996) (RICO statutes did not provide an express waiver of sovereign immunity).

As the supreme court has noted, a lack of immunity from suit could "hamper governmental functions" if tax resources must be diverted from their intended purposes to be used for defending lawsuits and paying judgments. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 375 (Tex. 2006). Thus, courts generally defer to the Legislature to waive sovereign immunity because it is "better suited to address the conflicting policy issues involved." *Id.*

But in situations where "the opposing party's claims can operate only as an offset to reduce the government's recovery," the potential of an adverse judgment would not pose the same threat to the governmental entity's fiscal planning. *See id.* Furthermore, a governmental entity has presumably made the decision to expend resources on litigation prior to "inject[ing] itself into or choos[ing] to engage in litigation to assert affirmative claims for money damages." *Id.* Thus, where the governmental entity files suit for damages, either in the first instance or as an intervenor, such suits "encompass[] a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with, and properly defensive to claims the [entity] asserts." *Id.* at 377.

Here, the mother's counterclaims could not offset any monetary relief sought by TDFPS. TDFPS requested orders requiring the parents to make payments for the temporary support of the children. *See* Tex. Fam. Code Ann. § 154.001(b) (West Supp. 2013). The only counterclaims or offsets allowed against child support arrearages are those provided for by Title 5 of the Family Code. *See* Tex. Fam. Code Ann. § 157.263(b-1) (West Supp. 2013) ("[T]he court may not reduce or modify the amount of child support arrearages but, in confirming the amount of arrearages, may allow a counterclaim or offset *as provided by this title*." (emphasis added)). In a case construing section 157.263's predecessor, section 157.262,[4] our

---

[4] Act of Apr. 20, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 184,

11

sister court noted that although the subchapter "contains no description of any applicable counterclaims or offsets," a court "may not go outside the bounds of the subchapter to fashion counterclaims and offsets." *Att'y Gen. of Tex. v. Stevens*, 84 S.W.3d 720, 723 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (emphasis removed). Thus, any money damages the mother might otherwise recover under section 1983 or the RICO statutes could not be offset against the child support payments sought by TDFPS.

Because a judgment in favor of the mother would not offset the relief sought by TDFPS, such a judgment could jeopardize TDFPS's fiscal planning, which indicates that the Legislature should decide whether sovereign immunity should be waived. *See Reata Constr. Corp.*, 197 S.W.3d at 375. Because there is no legislative waiver, we affirm the trial court's dismissal of the mother's RICO and section 1983 claims.

## III.  The mother's self-incrimination claim was properly dismissed because it was not ripe.

The trial court also properly granted the plea to the jurisdiction as to the mother's Fifth Amendment challenge to TDFPS's request that she undergo a psychological evaluation under Rule 204.4(a). The mother was not entitled to a declaration regarding whether such an evaluation would violate her privilege against self-incrimination because that claim was not ripe at the time of filing. Moreover, to the extent the claim has since matured, the mother has not shown an injury.

Ripeness "is a threshold issue that implicates subject matter jurisdiction." *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439,

---

*repealed by* Act of Sept. 1, 2011, 82d Leg., R.S., ch. 508, § 24, 2011 Tex. Gen. Laws 1264, 1269.

442 (Tex. 1998). Stemming in part from the prohibition on advisory opinions, "the ripeness doctrine serves to avoid premature adjudication." *Id.* at 442–43.

Assessing a claim's ripeness requires courts to evaluate (1) "the fitness of the issues for judicial decision," and (2) "the hardship to the parties of withholding court consideration." *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (quoting *Abbot Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). When ripeness is premised on the threat of harm, the harm must be imminent, rather than "conjectural, hypothetical, or remote." *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 852 (Tex. 2000). The facts must be sufficiently developed at the time of filing to demonstrate that the claimed imminent injury does not remain contingent on some future uncertainty. *Id.* at 851–53; *but see Del Rio*, 66 S.W.3d at 252 ("[A] claim's lack of ripeness when filed is not a jurisdictional infirmity requiring dismissal if the case has matured."). A plea to the jurisdiction is properly granted if the plaintiff "cannot demonstrate a reasonable likelihood that the claim will soon ripen." *See Drexel Corp. v. Edgewood Dev., Ltd.*, 14-13-00353-CV, 2013 WL 5947007, at *3 (Tex. App.—Houston [14th Dist.] Nov. 7 2013, no pet.) (internal quotations omitted).

Here, the mother complains of the threat of harm posed by her "Hobson's choice" of submitting to a psychological evaluation or potentially losing her children if she appears uncooperative. This alleged dilemma did not present a ripe claim under the Fifth Amendment when the mother filed her counterclaim.

The Fifth Amendment privileges the mother "not to answer official questions put to [her] in any . . . proceeding, civil or criminal, formal or informal, where the answers might incriminate [her] in future criminal proceedings." *Chapman v. State*, 115 S.W.3d 1, 6 (Tex. Crim. App. 2003) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)). However, the mother "may not employ the

privilege to avoid giving testimony that [she] simply would prefer not to give." *Roberts v. United States*, 445 U.S. 552, 560 n. 7 (1980).

In civil suits,[5] the court, and not the witness, is the arbiter of whether the privilege applies. *In re Speer*, 965 S.W.2d 41, 46 (Tex. App.—Fort Worth 1998, no pet.). That determination is made as to each individual question for which the privilege is asserted. *Burton v. West*, 749 S.W.2d 41, 46 (Tex. App.—Houston [1st Dist.] 1998, no writ); *see also In re Commitment of Browning*, 113 S.W.3d 851, 862 n.10 (Tex. App.—Austin 2003, pet. denied) ("[B]lanket assertions of the privilege are impermissible in civil cases.").

Without knowing what questions the psychologist might ask during the evaluation, it would have been impossible for the trial court to assess on a question-by-question basis whether the mother's assertion of the privilege would be permissible. As such, the mother's assertion of privilege was not fit for judicial resolution at the time she filed her counterclaims, because any injury would be contingent upon the content of unknown questions which might be asked in the evaluation, the answers to which might later be introduced to incriminate the mother.[6]

---

[5] We note that some "civil" proceedings are treated as criminal for purposes of the self-incrimination clause where "the primary purpose of the proceeding is punishment." *See Murray v. Tex. Dep't of Family & Protective Servs.*, 294 S.W.3d 360, 367 (Tex. App.—Austin 2009, no pet.) (citing *Allen v. Illinois*, 478 U.S. 364 (1986)). However, "the purpose of the State's intervention in the parent-child relationship is to protect the best interests of the children, not to punish parents for their conduct." *In re A.V.*, 113 S.W.3d 355, 361 (Tex. 2003). This does not mean that we ignore the potential that the mother will eventually lose possession of her children, as the ripeness inquiry includes reference to the hardship of withholding court consideration. *See Del Rio*, 66 S.W.3d at 250.

[6] Although the mother participated in a substance abuse assessment prior to TDFPS's intervention, it was not as the result of a court order. Thus, that assessment cannot serve as a predicate for declaratory or injunctive relief regarding a rule authorizing court-ordered assessments.

Furthermore, withholding court consideration did not pose a significant hardship as the mother would have an additional opportunity to assert the privilege not to answer individual questions in the actual evaluation. *See In re Verbois*, 10 S.W.3d 825, 828 (Tex. App.—Waco 2000, orig. proceeding) ("Upon submitting to such an evaluation . . . [i]f an inquiry calls for an answer that might reasonably present a hazard of self-incrimination . . . he may refuse to answer . . . ." (internal citations and quotations omitted)). The mother's contention that appearing uncooperative would result in the loss of her parental rights is too conjectural and remote to serve as the basis for a ripe claim at this stage. The trial court is the arbiter of the mother's parental rights, and there is nothing in the record to indicate that the court would hold a successful assertion of the privilege against the mother in determining whether to modify the parent-child relationship.

To the extent that the claim "matured" as a result of the trial court's May 8 order of a forensic evaluation, *see Del Rio*, 66 S.W.3d at 252, the record affirmatively negates that an injury has since occurred. *See Ranjel*, 407 S.W.3d at 893 (holding that the "evidence does not support further amendments that would cure [the] jurisdictional deficiency"). Although a licensed chemical dependence counselor appeared during the full adversary hearing on the parent-child relationship, the counselor did not testify as to whether the mother had consumed alcohol within twenty-four hours of her possession of the children (and thus violated a court order), or whether the mother had sexually or physically abused her children. Thus, any statements the mother may have made to the counselor that would tend to incriminate her were not introduced into evidence.

Because the record affirmatively negates the existence of a ripe declaratory judgment claim under the Fifth Amendment, we affirm the trial court's grant of the plea to the jurisdiction as to that claim.

**IV.  Texas has not waived immunity to sue TDFPS for unreasonable searches under the Fourth Amendment.**

The mother next argues that sovereign immunity does not bar her claim for declaratory and injunctive relief alleging a Fourth Amendment violation.  The mother's Fourth Amendment challenge does not fall within the limited waiver of immunity contained in the UDJA, however.  Nor does her claim fall within the *ultra vires* exception to sovereign immunity.  Accordingly, the trial court lacked jurisdiction over this claim.

The mother's Fourth Amendment challenge does not fall within the scope of the express waiver in the UDJA.  Although TDFPS might "be a proper party to a declaratory judgment action that challenges the validity of a statute," *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 (Tex. 2011), the mother has not challenged the validity of a statute.  Instead, the mother sought a declaration that TDFPS's "*practice* of requiring parents to submit to random drug testing is unconstitutional."  (emphasis added).  Because she is challenging the agency's actions rather than a statute, she cannot rely on the waiver contained in the UDJA. *See id.*

Nor can the mother rely on the *ultra vires* exception to sovereign immunity.  Under the *ultra vires* exception, suits that seek to "require state officials to comply with statutory or constitutional provisions are not prohibited by sovereign immunity."  *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).  However, as the supreme court clarified in *City of El Paso v. Heinrich*, the proper party in an *ultra vires* claim is the state actor in his or her official capacity, even though for all practical purposes, the suit is against the state.  *Id.* at 373.  "[A]s a technical matter, the governmental entities themselves—as opposed to their officers in their official capacity—remain immune from suit."  *Id.* at 372–73.

16

The trial court's order granting TDFPS's plea to the jurisdiction does not address any parties who fit within this exception. TDFPS is an agency, and thus remains immune from *ultra vires* claims under *Heinrich*. *Id.* Although the mother purported to add two TDFPS caseworkers as defendants in her "First Amended Counterclaim," the trial court severed only the mother's counterclaim against TDFPS, which made its order granting TDFPS's plea to the jurisdiction final. Accordingly, any counterclaims by the mother against other parties are not before us.

Furthermore, even considering the "First Amended Counterclaim" as a proposed amendment to cure jurisdictional defects, *see Ranjel*, 407 S.W.3d at 886, the ability to amend to cure such defects on remand does not extend to suing new parties. *Compare id.* at 893 ("Generally, an appellate court allows a litigant to amend his pleadings to cure defects when the pleadings do not allege sufficient jurisdictional *facts* but do not affirmatively negate jurisdiction." (emphasis added)). Remand is only called for where the pleadings do not affirmatively negate jurisdiction. *Id.* at 892. Here, the pleadings affirmatively negated jurisdiction because the only named defendant was immune.

Although the supreme court has previously remanded to allow a plaintiff to add state actors, the remand was "in light of its clarifications" in *Heinrich*. *See Sefzik*, 355 S.W.3d at 623 (citing *Tex. Parks and Wildlife Dep't v. Sawyer Trust*, 354 S.W.384, 394 (Tex. 2011)). In doing so, the court noted that the case was filed prior to *Heinrich*, when its case law was "less than clear" regarding the proper defendant in an *ultra vires* suit. *Sefzik*, 355 S.W.3d at 623.

Here, because the mother filed her original counterclaim in 2012, nearly three full years after *Heinrich* was decided, remand is not warranted. *See Boll v. Cameron Appraisal Dist.*, No. 13-11-00750, 2013 WL 4187756, at *2 (Tex.

17

App.—Corpus Christi, Aug. 15, 2013).  The law was sufficiently clear for the mother to be required to name the proper party.  We therefore affirm the grant of TDFPS's plea to the jurisdiction as to the mother's Fourth Amendment challenge.

## V.    The mother's First Amendment challenge to the Family Code is barred by the law-of-the-case doctrine.

Finally, the mother argues on appeal that section 153.371 of the Family Code violates the First Amendment by giving a nonparent managing conservator the right to direct the moral and religious training of her children.  It is not clear that the trial court considered this declaratory judgment claim, however.  The mother included this claim for the first time in her First Amended Counterclaim, which was not filed until after the trial court's order granting the plea to the jurisdiction.  Her original petition did not request declaratory relief regarding any First Amendment violation, but merely noted a different First Amendment issue regarding the "adverse effect on [her] First Amendment right of association with her children" if CPS were appointed managing conservator.

In any event, a remand for the trial court to consider the mother's First Amendment claim properly would be futile because we have rejected it in a related mandamus proceeding.  Under the law-of-the-case doctrine, decisions rendered in former appeals are generally binding in a later appeal of the same case.  *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 372 S.W.3d 177, 182 (Tex. 2012).  Although denial of a mandamus petition "does not necessarily establish law of the case," denials containing a comment on the merits may be treated as binding in a subsequent appeal.  *In re L.R.*, 416 S.W.3d 675, 677 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Chambers v. O'Quinn*, 242 S.W.3d 30, 32 (Tex. 2007)).

18

This Court has already commented on the merits of the mother's challenge to section 153.371 of the Family Code. *See In re Solley*, 2012 WL 3135549, at *1. In denying the mother's petition for writ of mandamus, we rejected her challenge to the trial court's order giving TDFPS the right to direct the moral and religious training of the children, pointing out that the mother was granted the "'right to direct the moral and religious training of the child[ren]' during her periods of possession of the child[ren]." *See id.* Accordingly, the mother's First Amendment complaint is barred by the law-of-the-case doctrine. *See In re L.R.*, 416 S.W.3d at 677.

## CONCLUSION

Having concluded that the trial court did not err in granting TDFPS's plea to the jurisdiction on each of the claims before it, we overrule the mother's sole issue and affirm the trial court's judgment granting the plea and dismissing the mother's claims.


/s/   J. Brett Busby
      Justice

Panel consists of Justices Boyce, McCally, and Busby.